**Tommy WOODSON, Plaintiff–Appellee, Cross–Appellant,**

v.

**Larry LACK, Donal Campbell, and Bruce Coates, Defendants–Appellants, Cross–Appellees.**

Nos. 87–5227, 87–5271.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 8, 1988.

Decided Jan. 13, 1989.

Rehearing and Rehearing En Banc
Denied March 29, 1989.

**108**

W.J. Michael Cody, Atty. Gen. of Tenn., Jane W. Young (argued), Nashville, Tenn., for defendants-appellants, cross-appellees.

David A. Rodabaugh, pro bono (argued), Lima, Ohio, for plaintiff-appellee, cross-appellant.

* The Honorable Edward H. Johnstone, Judge of the United States District Court for the Western District of Kentucky, sitting by designation.

Before MERRITT and GUY, Circuit Judges; and JOHNSTONE, District Judge.*

MERRITT, Circuit Judge.

The Tennessee prisoner before us complains that he was removed from the general prison population and placed in solitary confinement without due process. He won his case in the court below, and the State appeals. The basic issue before us is whether the Supreme Court opinion in *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) (holding that only minimum due process protections are required when a prisoner is transferred to "non-punitive administrative segregation" as a security threat and for investigation of misconduct), overrules our case of *Bills v. Henderson*, 631 F.2d 1287 (6th Cir.1980) (holding that transfer to administrative segregation as punishment for a specific rule infraction under Tennessee prison policies entitles a prisoner to notice, a hearing, a deliberative decision and a general statement of reasons as required in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)). We conclude that the *Bills* case is still good law and affirm the judgment of District Judge Thomas Higgins based on *Bills*.

I.

Officials at the Tennessee Department of Correction appeal from the District Court's order entering declaratory judgment in favor of the state prisoner, Woodson, on his claim of denial of procedural due process under the Fourteenth Amendment. The officials also appeal the granting of a permanent injunction prohibiting placing any inmate in involuntary administrative segregation based upon a specific rule infraction without conducting a hearing in accordance with the procedural requirements set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Woodson appeals the District Court's dismissal of his claim for damages.

Woodson sued Lack, the Warden of Turney Center, for his placement in solitary confinement. The Tennessee Department of Correction "involuntary administrative segregation report" form reflects that Lack took this action on the basis of confidential information which identified Woodson as a participant in a July 1, 1985, Turney Center riot.

Woodson denied his involvement in the riot and stated that he remained in his cell or his brother's cell with the door closed. Woodson was taken to the administrative segregation unit at Turney Center on July 13, 1985, but was not told the reason for his confinement. He did not receive a written charge for over two weeks. When Woodson appeared before the Disciplinary Board, he denied any involvement in the riot. He was not given the right to present evidence. There is no evidence that the Board made a deliberative decision or gave Woodson a statement of reasons. He was charged in state court with participation in the riot. When these charges were dismissed against him in September, he was released from segregation. Later in December, Woodson was returned to administrative segregation because he was charged again in state court for participating in the July 1st riot.

Woodson remained in segregation for two months. His status was not reviewed as provided in the regulations of the Tennessee Department of Correction for administrative segregation. He did not lose his good time credits or his television set.

Magistrate Joe Haynes, on referral of the case from Judge Higgins, found that Woodson was placed in solitary confinement as a punitive measure. Lack's initial charge against Woodson was for participation in a riot, a serious rule infraction. The information in support of that charge was turned over to the local district attorney. Magistrate Haynes found that Woodson's continued segregation was based upon a finding of a specific rule infraction and not based on general security considerations. The Magistrate concluded that under the rules of the Tennessee Board of Pardons and Paroles, Lack's charge against Woodson would have a "significant effect" on his chances for parole.

The District Court found on *de novo* review that although security reasons may have initially prompted Woodson's segregation, they were "subsumed beneath what the magistrate found to be punitive reasons" for Woodson's segregation. (JA at 49). The State argues that Woodson's placement in administrative segregation was based on his potentially disruptive behavior, not on a violation of a specific rule infraction. After a careful review of the entire record, we cannot say that the findings of Judges Haynes and Higgins are clearly erroneous. Consequently, Woodson must be accorded the due process triggered when an inmate is accused of a serious, specific rule infraction.

## II.

In *Wolff* the Supreme Court held that inmates facing loss of good-time credits arising from disciplinary charges for misconduct must be given advance notice of the charges, the opportunity for an evidentiary hearing, a decision by an impartial tribunal and a written statement of reasons. *Wolff*, 418 U.S. at 564–67, 94 S.Ct. at 2978–80.

In *Hewitt* the Supreme Court narrowed *Wolff*. The Court held that an inmate may be placed in "non-punitive" segregation to safeguard institutional security or to conduct an investigation of unresolved misconduct charges without invoking the *Wolff v. McDonnell* procedures. *Hewitt*, 459 U.S. at 476, 103 S.Ct. at 873–874.

In *Bills*, decided by this Court after *Wolff* but before *Hewitt*, Judge Kennedy wrote for a unanimous panel that the Tennessee prison system by its own rules and policies had accorded prisoners a limited liberty interest which requires that prisoners transferred to administrative segregation for infraction of prison rules receive the procedural protections provided in *Wolff*. Magistrate Haynes and Judge Higgins applied *Bills*. They concluded that Woodson was segregated for a rule infraction and received none of the *Wolff* protections.

The State argues that *Bills* no longer applies because *Hewitt* in effect overruled *Bills*. We do not read *Hewitt* in this way. There may be some tension between *Wolff* and *Hewitt*, but the Supreme Court has not as of now overruled *Wolff*. *Hewitt* makes it clear that the Court was not concerned in that case with disciplinary charges or a rule infraction but only with considerations of general prison safety—although this interpretation of the facts may be somewhat strained in view of the fact that the prison inmate was faced with an investigation of the same rule infraction as the prisoner in the present case, namely, engaging in a prison riot. The Court in *Hewitt* chose to view the increased confinement as "non-punitive." So long as the Supreme Court retains this due process distinction between punishment for a rule infraction and "segregation to safeguard institutional safety," the *Bills* decision remains good law for it is based on the same distinction. The Court below applied *Bills* correctly.

Woodson's cross-claim for damages must be dismissed under *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985), holding that a party who fails to object to a magistrate's report waives appeal. Judge Higgins properly applied this waiver principle to the present case.

Accordingly, the judgment of the District Court is affirmed.