James T. SULLIVAN, Plaintiff,

v.

Gileen FORD and M. Snider, Defendants.

Civ. A. No. 93–CV–72317–DT.

United States District Court,
E.D. Michigan, S.D.

July 27, 1993.

James T. Sullivan, in pro. per.

## ORDER OF DISMISSAL

GADOLA, District Judge.

Plaintiff, James T. Sullivan ("plaintiff"), presently confined at the State Prison of Southern Michigan in Jackson, Michigan, has filed this *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. The defendants are Michigan Department of Corrections ("MDOC") hearings officers Gileen Ford and M. Snider.

Plaintiff makes the following allegations: Defendants presided over two major misconduct hearings where plaintiff was charged with substance abuse. The defendants did not act as impartial hearings officers, but as "counsel" for the MDOC. Complaint at page 5. On two occasions plaintiff's urine tested positively for THC.[1] On the basis of these positive laboratory tests plaintiff was twice found guilty of abusing the illegal substance marijuana.

Plaintiff submitted documentary evidence that the legal pain killer and anti-inflammatory drug ibuprofen can cause false positive results in some laboratory tests for THC. Plaintiff testified that he consumed ibuprofen purchased at the prison's inmate store some time before his urine was tested for THC. The defendants refused to consider plaintiff's documentary evidence regarding the possibility that ibuprofen could cause false positives in the laboratory tests of his urine.

Plaintiff argues that the defendants' alleged refusal to consider his documentary evidence deprived him of due process of law at his two major misconduct hearings.

Plaintiff seeks compensatory and punitive damages.

## STANDARD OF REVIEW

Plaintiff has been granted *in forma pauperis* status. Pursuant to 28 U.S.C. § 1915(d), a district court may *sua sponte* dismiss an *in forma pauperis* complaint before service on the defendants "if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d); *Harris v. Johnson,* 784 F.2d 222, 223 (6th Cir.1986). A complaint may be dismissed as frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989). Section 1915 "accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Id.* at 327, 109 S.Ct. at 1833. *See also Denton v. Hernandez,* ― U.S. ―, ―, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

## ANALYSIS

### I. HEARING OFFICER IMMUNITY

In the Michigan state prison system, all prison misconduct disciplinary hearings

---

1. THC is an acronym for tetrahydrocannabinol, the active, intoxicating, ingredient in marijuana.

which may result in the "loss of disciplinary credits," M.C.L. § 791.251(2)(a), are to be held before a professional hearing officer. See generally, M.C.L. §§ 791.251 through 791.255; Mich.Admin.Rule 791.3301. Furthermore, "the hearings division shall be responsible for all administrative hearings on the following matters: (a) An infraction of prison rules which may result in punitive detention, as set forth in R. 791.5505(1)(a), the loss of good time, or *the loss of disciplinary credits.*" Mich.Admin.Rule 791.-3301(1)(a) (emphasis added).

Substance abuse is designated as a major misconduct which may subject an inmate to the forfeiture of up to two years of earned good time and disciplinary credits. Mich.Admin.Rule 791.5513(1)(b)(xi).

"[H]earing officers are in fact professional hearing officers in the nature of administrative law judges. They are required to be attorneys and they are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. M.C.L. 791.251. They are not simply prison employees subordinate to the prison warden...." *Shelly v. Johnson,* 849 F.2d 228, 230 (6th Cir.1988). Hearing officers do work for the MDOC. However, they work in a separate division from each prison's custodial staff. While a part of the Department of Corrections, they are not part of the work force at the prison where they hold hearings.

■ Professional hearing officers are entitled to absolute judicial immunity from damages for their discretionary actions taken in their capacity as hearing officers. *Shelly v. Johnson,* 849 F.2d at 229–30. Judicial immunity from damages liability functions to immunize its beneficiaries for all discretionary judicial acts except for acts done in "clear absence of all jurisdiction." *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Moreover, immunity is not lost because an action was taken in error, done maliciously, or because the person cloaked in immunity allegedly exceeded his or her authority. *Id.* at 356, 98 S.Ct. at 1104–05.

■ The defendants' actions taken in adjudicating plaintiff's major misconduct hearings were discretionary, quasi-judicial acts which were clearly within the defendants' jurisdiction as professional hearing officers. Therefore, the defendants are entitled to absolute immunity from damages liability for their actions taken in the adjudication of plaintiff's major misconduct hearings.

■ A complaint for damages is frivolous as to defendants who are clearly immune from damages. *Neitzke v. Williams,* 490 U.S. at 327, 109 S.Ct. at 1832–33. Plaintiff's lawsuit is a complaint for damages. Because the defendants are absolutely immune from damages, plaintiff's complaint for damages is frivolous and shall be dismissed.

## II. DUE PROCESS

■ "[I]nmates facing loss of good-time credits arising from disciplinary charges for misconduct must be given advance notice of the charges, the opportunity for an evidentiary hearing, a decision by an impartial tribunal, and a written statement of reasons." *Woodson v. Lack,* 865 F.2d 107, 109 (6th Cir.1989) (citing *Wolff v. McDonnell,* 418 U.S. 539, 564–67, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974)). Inmates have a limited right to call witnesses and present documentary evidence at the evidentiary hearing. However, the hearing officer may refuse to call a witness whose testimony would be irrelevant, unnecessary, or whose presence would be hazardous to institutional security. The hearing officer is not required to state why a witness was not called, although the Supreme Court stated that "it be useful" for the hearing officer to state his "reason for refusing to call a witness." *Wolff v. McDonnell,* 418 U.S. at 565–67, 94 S.Ct. at 2980.

■ Plaintiff contends that both defendants refused to consider documentary evidence he presented that a urinalysis test to which he was subjected was known to sometimes produce false positives for marijuana if the subject had ingested ibuprofen, a legal anti-inflammatory and analgesic drug. He argues that this alleged refusal to consider his evidence deprived him of due process.

Plaintiff has submitted copies of his misconduct reports. Defendant Ford's report states the following:

Prisoner submits an article from the playboy advisor regarding urine screens which this examiner refuses to accept as evidence. Prisoner officers [sic] another article from a book called DRUG TESTING LEGAL MANUAL. Examiner informs the prisoner that the department of corrections relies on pharm chem drug screening laboratories as experts in the area of drug testing....

Examiner finds that the information submitted by the prisoner is not necessary since the information provided by pharm chem drug laboratory is reliable.

Misconduct Hearing Report dated 4/27/93, Plaintiff's Ex. B.

Thus, defendant Ford found plaintiff's exhibits unnecessary and refused to consider them. However, defendant Ford was aware of plaintiff's testimony regarding ibuprofen and false positives.

Defendant Snider noted plaintiff's statement that he was taking ibuprofen and his exhibits regarding ibuprofen and false positives. Snider wrote that he "has dealt with this issue before in numerous hearings." Plaintiff's Ex. E. · Snider found that "per Pharm Chem labs May 1987 Newsletter that no substance other the T.H.C. can cause a positive test result on the Pharm Chem tests." Plaintiff's Ex. E.

Thus, defendant Snider apparently considered the evidence presented by plaintiff about ibuprofen and false positives, but found that this evidence was unpersuasive.

In *Higgs v. Bland,* 888 F.2d 443, 449 (6th Cir.1989), the Sixth Circuit stated that "a test which produced frequent incorrect results could fail to constitute 'some evidence' under the *Hill*[2] standard. However, no evidence was produced in this case to indicate that the probability of false results was more than a mathematical possibility." On this basis, the court ruled that "a positive EMIT test constitutes 'some evidence' from which the adjustment board could conclude that a

tested inmate was guilty on the offense of drug use." *Higgs v. Bland,* 888 F.2d at 449.

EMIT is an acronym for "enzyme multiplied immunoassay technique." *Burka v. New York City Transit Authority,* 739 F.Supp. 814, 836 (S.D.N.Y.1990). In *Burka* the court noted that "[t]he record shows that the ingestion of certain lawful drugs or herbs causes false positive in both the EMIT and BPA/TLC[3] tests. The parties have stipulated that, in February 1986, the manufacturer of EMIT announced that three commonly used, legal, anti-inflammatory drugs—ibuprofen (found in Advil, Nuprin, and Motrin), fenopropen (found in Nalfon), and naproxen—'create positive [EMIT] results in samples where no marijuana metabolite exists.'" *Burka v. New York City Transit Authority,* 739 F.Supp. at 837.

However, the manufacturer "modified its EMIT test in 1985 to prevent anti-inflammatory drugs from causing false positives." *Burka v. New York City Transit Authority,* 739 F.Supp. at 837. The *Burka* court noted that while the EMIT test was corrected for anti-inflammatory drugs, it remained *possible* that other legal substances could interfere with the accuracy of the EMIT test, or the BPA/TLC test, or both, and produce false positive results.

Nonetheless, that court ruled that:

Although evidence was presented the DSAS reports on occasion were of questionable accuracy, the Court does not find the accuracy of the drug tests to have been so unreliable as to render it violative of due process to have used the drug test reports in the determination of whether the worker was a drug user. This finding is in accordance with cases upholding the admissibility in legal proceedings of the results of scientific tests which are neither foolproof nor patently unreliable.

*Burka v. New York City Transit Authority,* 739 F.Supp. at 838 (collecting cases).

Plaintiff has not indicated precisely what drug tests were used to test his urine for

---

2. *Superintendent, Massachusetts Correctional Institution at Walpole v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774–75, 86 L.Ed.2d 356 (1985).

3. BPA/TLC is an acronym for "bonded phase absorption with thin layer chromatography." *Burka v. New York City Transit Authority,* 739 F.Supp. at 836.

THC. The type of tests are indicated in the hearing officer's statement of reasons in a misconduct hearing report that plaintiff has submitted as his Exhibit E. The report states the following: "The urine sample is tested twice using two testing techniques, the EIA Enzyme Immunoassay and [the] HPTLC High performance thin layer chromatography." Plaintiff's Ex. E.

It appears that the MDOC used an enzyme immunoassay similar to the EMIT test to test plaintiff's urine. The Sixth Circuit found EMIT test results to be sufficiently accurate to constitute "some evidence" sufficient to satisfy the constitutional threshold of *Superintendent v. Hill.* The MDOC also used a thin layer chromatography test to confirm plaintiff's positive THC results. The court in *Burka* found that results of the EMIT test and a thin layer chromatography test, while not infallible, were sufficiently accurate to be used as evidence that a civilian transit employee was a drug user. The *Burka* court also explained that while it had been discovered that some anti-inflammatory drugs such as ibuprofen caused false positive EMIT tests at one time, *this problem had been recognized and corrected in 1985.*

Pharm Chem's newsletter regarding THC testing was dated May 1987. Plaintiff complains of THC testing done in 1993. This Court need not determine whether in the past problems with the enzyme immunoassay tests and anti-inflammatory drugs produced sufficiently "frequent incorrect results" to fail to constitute some evidence under the *Hill* standard. *Higgs v. Bland,* 888 F.2d at 449. The problem with such tests and anti-inflammatory drugs was recognized and corrected some time ago, four years before the *Higgs* case was decided, and eight years before plaintiff's complained of 1993 urine tests. Documentary evidence which merely reflects a problem which formerly existed, but has been corrected, is indeed unnecessary and irrelevant.

In light of all of the above, this Court concludes that it did not deprive plaintiff of due process of law to either refuse to consider outdated documentary evidence regarding problems with ibuprofen and false positive

THC tests, or to consider this evidence, but find it unpersuasive.

This is an additional, alternative reason why plaintiff's complaint shall be dismissed.

Accordingly,

IT IS ORDERED that the complaint is DISMISSED as frivolous pursuant to § 1915(d). Based on the preceding order, this Court certifies that any appeal by plaintiff would be frivolous and not in good faith. 28 U.S.C. § 1915(a).