961 F.2d 219
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Alan Wayne GOCKLEY, Plaintiff-Appellant,
v.
Kevin LEMMOND, James Wallace, Mike Taylor, and Dolores
Ramsey, Defendants-Appellees.
 No. 91-7119.
 United States Court of Appeals, Tenth Circuit.
 April 22, 1992.
 
 Before LOGAN, BARRETT and EBEL, Circuit Judges.
 ORDER AND JUDGMENT*
 BARRETT, Circuit Judge.
 
 
 1
 After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); Tenth Cir.R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Alan Wayne Gockley, an inmate at the Oklahoma State Reformatory, appearing pro se, appeals from an order of the district court affirming and adopting the findings and recommendation of the U.S. Magistrate and granting summary judgment in favor of appellees, officials within the Oklahoma Department of Corrections. We grant Gockley's motion to proceed in forma pauperis and for a certificate of probable cause.
 
 
 3
 On May 13, 1988, a devastating riot occurred at the Mack Alford Correctional Center (MACC), a medium security penitentiary in Stringtown, Oklahoma, where Gockley was incarcerated. The riot caused over 7.7 million dollars in damage and totally destroyed portions of MACC. Gockley was alleged to have set fires and to have participated in the riot. Following the riot, 435 inmates, including Gockley, were transferred from MACC to Oklahoma State Penitentiary (OSP), McAlester, Oklahoma, a maximum security penitentiary.
 
 
 4
 At OSP, Gockley was placed in restrictive housing pending investigation of his involvement in the MACC riot. Following an investigation, Gockley was convicted of group disruption and reclassified to maximum security resulting in his inability to earn emergency time credits (cap credits) under Okla.Stat.Tit. 57 § 574 (1989).
 
 
 5
 Gockley subsequently filed a 42 U.S.C. § 1983 civil rights complaint alleging that appellees deprived him of his due process rights when they transferred him to OSP, placed him in restrictive housing, and reclassified him to maximum security status. Gockley also alleged that he was denied due process when he lost the opportunity to earn cap credits. Gockley sought to have the group disruption charge expunged from his record, to have certain cap credits applied to his record, and to be returned to his prior security status.
 
 
 6
 Gockley's case was assigned to a magistrate. Appellees moved to dismiss for failure to state a claim upon which relief could be granted. The magistrate notified the parties that he was treating appellees' motion to dismiss as a motion for summary judgment.
 
 
 7
 Within its findings and recommendation that Gockley's complaint should be dismissed, the magistrate found and concluded, based on undisputed facts: an emergency situation existed during and subsequent to the riot; during the emergency situation, normal prison disciplinary proceedings and relevant time frames were suspended in order to guarantee the safety of the inmates and correctional employees.
 
 
 8
 The magistrate further found and concluded that: in light of the situation, Gockley was provided a hearing within a reasonable time; Gockley's due process rights were not violated in regard to his transfer to OSP, his placement in restrictive housing, or his classification to maximum security; cap credits under § 574 are an act of legislative grace; Gockley had no protected interest in cap credits; because Gockley did nothing to earn cap credits, he cannot claim the right to earn them when his security status has been reclassified; Gockley was afforded an opportunity for a hearing and review via procedures which comported with due process of law; and Gockley has not alleged facts necessary to support a claim for a violation of his eighth amendment right to be free from cruel and unusual punishment.
 
 
 9
 In affirming and adopting the magistrate's findings and recommendation, the district court concluded: the reports given Gockley comported with the due process requirements of Wolff v. McDonnell, 418 U.S. 539 (1974) (due process requires that a prison inmate be given a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action taken); due process requirements are satisfied if "some evidence," Superintendent v. Hill, 472 U.S. 445, 455 (1985), supports the decision for disciplinary action; appellees provided "some evidence" supporting the disciplinary hearing officer's finding that Gockley had participated in the riot.
 
 
 10
 The court also concluded that: Gockley was not denied due process with respect to the disciplinary action taken against him following his transfer to OSP in the aftermath of the MACC riot; Gockley's complaint that he lost the opportunity to earn cap credits is, in effect, a challenge to the duration of his imprisonment for which his sole remedy is a writ of habeas corpus; and Gockley must exhaust his state law remedies before instituting a federal habeas corpus action.
 
 
 11
 On appeal, Gockley contends that he was denied due process during the course of the disciplinary proceedings and that he was subjected to cruel and unusual punishment by being placed in maximum security and losing his cap credit eligibility.
 
 I.
 
 12
 Gockley contends that he was denied due process during the course of the prison disciplinary proceedings. Gockley contends that: he did not receive a written statement of the evidence relied on at his disciplinary hearing; he did not receive an adequate offense report from which he could prepare a proper defense; and appellees failed to follow their own regulations with respect to his transfer from MACC to OSP and his disciplinary proceedings.
 
 
 13
 a.
 
 
 14
 We agree with the district court that Gockley received an adequate written statement of the evidence relied on at his disciplinary hearing:
 
 
 15
 Plaintiff first complains that he did not receive a written statement of the evidence relied on at his disciplinary hearing. In Wolff v. McDonnell, 418 U.S. 539 (1974), the U.S. Supreme Court stated that due process required that a prison inmate be given a written statement by the factfinder as to the evidence relied upon and the reasons for the disciplinary action taken.
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 In the present case, plaintiff's signature on an offense report dated June 16, 1988 indicates his receipt of that report which charged plaintiff with the offense of "group disruption" and described the offense as "along with other inmates, [plaintiff] did participate in activities such as the setting of fires and acting disorderly. The offense report identified the information as based on 'Officer observation' and identified Officer Kevin Lemmond as the only staff witness." The court finds that plaintiff's offense report gave plaintiff a sufficient description of the evidence to be used against him, that with the disciplinary action report, comported with the due process requirements of Wolff.
 
 
 19
 (R., File # 2, Order, September 30, 1991, pp. 2-3).
 
 
 20
 b.
 
 
 21
 We reject Gockley's contention that he did not receive an adequate offense report from which he could prepare a proper defense. The offense report which Gockley received specifically charged him with "group disruption" and described the offense as "participat[ing] in activities such as the setting of fires and acting disorderly." Inasmuch as "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply," Wolff v. McDonnell, supra, at p. 555, we hold that the written notice afforded Gockley was adequate and not in violation of his due process rights.
 
 
 22
 c.
 
 
 23
 Gockley contends that the appellees violated his due process rights when they failed to follow their own rules and regulations with respect to his transfer to OSP and his disciplinary proceedings. Gockley argues that appellees were required to follow their own rules and time frames.
 
 
 24
 Prison officials have broad administrative and discretionary authority over the institutions they manage. The administration of a prison is, "at best an extraordinarily difficult undertaking," Hewitt v. Helms, 459 U.S. 460, 467 (1983), quoting Wolff v. McDonnell, supra, at p. 566. Thus, "[p]rison administrators ... should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 547 (1979).
 
 
 25
 An emergency situation existed during and after the devastating riot at MACC. Appellees were required to immediately relocate over four hundred inmates and staff. Gockley was transferred to OSP where he was placed in restrictive housing pending an investigation into his participation in the MACC riot.
 
 
 26
 The magistrate found that under such circumstances it was "understandable that normal prison disciplinary proceedings and relevant time frames were suspended to guarantee the safety of the inmates and correctional employees." (R., File # 2, Tab 40, p. 4). The district court concluded that the defendants did not act "unreasonably in suspending the normal time frames for disciplinary actions and in failing to notify the plaintiff of that suspension, as the defendants attempted to stabilize the prison conditions in the aftermath of the Stringtown riot." (R., File # 2, Order, September 30, 1991, p. 5). We agree.
 
 
 27
 Notwithstanding the riot and the necessity to relocate the inmates and support staff, Gockley received written notice of the offense report filed against him on June 16, 1988, approximately one month after the riot. Thereafter, Gockley requested and received an administrative hearing on July 18, 1988, at which he was allowed to testify and call any witnesses. Under these circumstances, we agree with the magistrate's findings, affirmed and adopted by the district court, that Gockley was provided a hearing within a reasonable period of time and that his due process rights were not violated by his transfer to OSP, his placement in restrictive housing, and his subsequent classification to maximum security.
 
 II.
 
 28
 Gockley contends that he was subjected to cruel and unusual punishment and denied due process when, after finding him guilty of a rule violation, appellees housed him in maximum security and took away his cap credit eligibility.
 
 
 29
 We agree with the district court's finding that this contention cannot be considered in this proceeding:
 
 
 30
 Plaintiff finally complains that upon transfer to the penitentiary and reclassification to maximum security status he lost the opportunity to earn emergency time credits [cap credits] against his sentence....
 
 
 31
 Since cap credits are applied to reduce the length of the sentence, plaintiff is in effect challenging the duration of physical imprisonment and seeks as relief the determination that he is entitled to a speedier release. However, the plaintiff's sole federal remedy is a writ of habeas corpus. Preiser v. Rodriguez, 411 U.S. 475, 500 (1972). Plaintiff must have exhausted his state law remedies before instituting a federal habeas corpus action. See Taylor v. Wallace, 931 F.2d 698, 699-700 n. 1 (10th Cir.1991). Plaintiff's appeal of the dismissal of his state district court action is still pending before the Oklahoma Supreme Court, and thus he cannot yet be deemed to have exhausted his state law remedies to enable this court to consider the loss of his cap credits.
 
 
 32
 (R., File # 2, Order, September 20, 1991, pp. 5-6).
 
 
 33
 AFFIRMED.
 
 
 
 *
 This Order and Judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3