[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON HABEAS CORPUS PETITION
The petitioner, Joseph DeMasi, brought this petition for a writ of habeas corpus against the respondent Warden on or about March 10, 1997. The petition was supplemented by an additional petition on or about April 12, 1997 in connection with another disciplinary proceeding involving the petitioner. The two petitions were heard together by the court.
On or about October 26, 1996, the petitioner sent correspondence to a pen pal he discovered while browsing through a magazine in prison. On November 4, 1996, the petitioner's letter was returned by the State of Indiana Department of Correction because, the addressee was an Indiana correctional inmate. On December 16, 1996, the petitioner received a disciplinary report for disobeying a direct order prohibiting the petitioner from corresponding with other inmates without approval of the warden.
On January 3, 1997, the petitioner was found guilty of violating this direct order. The sanctions imposed were 60 days loss of statutory good time and 30 days loss of mail.
On January 30, 1997, the petitioner received another CT Page 249 disciplinary report for theft and possession of contraband when a video game cartridge belonging to another inmate was discovered in the petitioner's cell. On February 21, 1997, a disciplinary hearing was held. At the hearing the theft charge was dropped for lack of evidence, but the petitioner was found guilty of possession of contraband. Sanctions imposed included 60 days loss of statutory good time, punitive segregation for 10 days, and 30 days loss of mail.
The petitioner filed a summary judgment motion, claiming that his due process rights were violated, specifically arguing that he was erroneously deprived of statutory good time credits. The respondent denies any violation of due process, or erroneous deprivation of good time credits.
This case is not appropriate for resolution by summary judgment. Among other things the motion was untimely. Moreover, as a matter of procedure, a motion for summary judgment is improper in a habeas corpus matter. Holcomb v. Commissioner ofCorrection, 39 Conn. App. 485, 491, 664 A.2d 1199 (1995). General Statutes § 52-470 (a), provides in pertinent part: "The court or judge hearing any habeas corpus shall proceed in a summary way to determine the facts and issues of the case, by hearing the testimony and arguments therein, and inquire fully into the cause of imprisonment, and shall thereupon dispose of the case as law and justice require." See Holcomb v.Commissioner of Correction, supra, 39 Conn. App. 491. Therefore, the motion for summary judgment is denied.
In Wolff v. McDonnell, the Supreme Court held that due process requires procedural protections before an inmate can be deprived of a protected liberty interest in good time credits.418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). The requirements of due process, however, are flexible and are determined by balancing the interests affected by the relevant government action. Superintendent v. Hill, 472 U.S. 445, 454,105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The inmate's interest in good time credits must be balanced in the context of the "distinctive setting of a prison, where disciplinary proceedings take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." Id.
In balancing these interests, due process is satisfied ifsome evidence supports the decision by prison officials to revoke CT Page 250 good time credits. Superintendent v. Hill, supra 472 U.S. 455. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (Emphasis added.) Id., 455-56. The Supreme Court reasoned that this standard was appropriate in the prison setting stating, "[p]rison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances." Id., citing Wolff v. McDonnell,
supra, 418 U.S. at 562-63, 567-69. Thus, the evidentiary threshold required to sustain the finding of a hearing officer is very low.
I. Violation of Direct Order: Unauthorized Correspondence
The petitioner was charged with violating the Code of Penal Discipline, Administrative Directive 9.5. Under that directive, an inmate must obey a direct order. The respondent argues that the petitioner was given a direct order by a correctional officer not to correspond with other inmates prior to approval by the warden. This order was based upon the Code of Penal Discipline, Directive No. 10.7, § 4 (C) (3) which states in pertinent part: "An inmate may write to anyone except . . . (3) an inmate in mother correctional facility. . . ." As a result of evidence produced, the hearing officer Found the petitioner guilty of violating Administrative Directive 9.5.
"In determining whether a decision of a prison disciplinary board had some evidence, courts are not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence." Williams v. Bass,63 F.3d 483, 486 (6th Cir. 1995), quoting Superintendent v. Hill, supra.472 U.S. 455. The testimony of the hearing officer, Lieutenant Dest, an eleven year correctional officer, two and one-half of which have been spent as a disciplinary officer, revealed that he had before him "ample evidence" (a written statement) that the petitioner did violate a direct order. See Superintendent v.Hill, supra, 472 U.S. 456-57; Banuelos v. McFarland, 41 F.3d 232,234 (5th Cir. 1995); Williams v. Bass, supra, 63 F.3d 486. First, the disciplinary report of Officer Riccio states that the petitioner had been given "several direct orders not to write to another correctional facility without written permission from the warden. . . ." (Disciplinary Report, p. 1, 12/16/96); (Disciplinary Investigation Report, p. 2, 12/16/96) ("Officer Riccio states that he told [the petitioner] not to write letters CT Page 251 to other correctional institutions unless he got permission from the warden[.] . . ." Officer Riccio's report also stated that "Counselor Egan has also advised [the petitioner] . . . how to properly process this type of request [for permission to correspond]." (Disciplinary Report, p. 1, 12/16/96).
Second, a notice from the State of Indiana Department of Correction was also submitted to Lieutenant Dest. The notice informed the petitioner that his correspondence was being returned because the petitioner's letter was addressed to an Indiana inmate. As in Connecticut, correspondence with other inmates is also prohibited under Indiana penal rules. (Notice and Report of Action taken on Correspondence, 11/4/96).
Third, an investigation report containing the petitioner's version of the incident, which the petitioner did not dispute during oral argument and testimony, stated that the petitioner did not remember writing the letter, but there is a "possibility" that he had written the letter. (Disciplinary Investigative Report, p. 1, 12/16/96). This casts doubt on his credibility. The Code of Penal Discipline, Directive 10.7, § 4 (E) (4) states in pertinent part: "All outgoing general correspondence shall include: (a) a complete legible name and address of the party the correspondence is sent to; (b) the inmate's complete legible name, inmate number, and present unit address. . . ." The notice from the State of Indiana Department of Correction listed the name and address of the sender as that of the petitioner. (Notice and Report of Action taken on Correspondence, 11/4/96). The notice identified the petitioner through his last name and his inmate number. Id.
Finally, Lieutenant Dest testified in court, that he personally interviewed Officer Riccio and the other investigating officers before the disciplinary hearing.[1] While no witnesses were called during the hearing, the petitioner suffered no harm because there was no credible evidence offered at the hearing by the petitioner which negated the information before Lieutenant Dest. See Banuelos v. McFarland, supra, 41 F.3d 234 (inmate's statement and written statements by guards were sufficient to rebut alleged prejudice resulting from hearing officer not calling witnesses because testimony would not have changed outcome of proceeding).[2] Thus, there was "some" evidence to support the hearing officer's finding of guilt with respect to the violation of the direct order not to write other inmates without prior approval from the warden. CT Page 252
II. Possession of Contraband
The petitioner was also charged with possession of contraband in violation of the Code of Penal Discipline, Administrative Directive 9.5 § 11 (C). Section 11 (C) states pertinent part: "Contraband Class B Being in possession of unauthorized items; or of inmate personal property. . . ." The term, "contraband," is defined as "[a]nything not authorized to be in an inmate's possession or anything used in an unauthorized or prohibited manner." Code of Penal Disciple, Administrative Directive 9.5 § 3 (E). Based upon the testimony of Officer Coggshell, a unit manager at the correctional institution, prisoners are not allowed to be in possession of property which belongs to other inmates.
There is ample evidence to sustain the finding of Lieutenant Dest on the charge of possession of contraband. First, the report of officer Cisinski states that during a routine search the petitioner was found with the video game cartridge in his possession. (Disciplinary Report, p. 1, 1/30/97). The cartridge bore the partially obscured markings of inmate Whiteley's identification number. Id. Second, inmate Whiteley's statement provides that the petitioner found and retained possession of the cartridge. Inmate Whiteley stated, "[h]e absolutely did not steal it but he did know that it was mine and that I wanted it back. I guess I acquiesced to letting him hold it until 2nd shift." Inmate Whiteley's acquiescence, however, does not waive the institutional rule prohibiting possession of another inmate's property. Moreover, while the statement of Inmate Whiteley and the statements of two other inmates establish that the petitioner did not steal the cartridge, the statements also demonstrate that the petitioner actually retained possession of the cartridge in violation of the institutional rules. Thus, there is "ample evidence in the record to support the decision made by the [hearing officer]." Banuelos v. McFarland, supra, 41 F.3d 234.
This court cannot engage in a second evidentiary hearing. The hearing officer's factual findings must stand in the absence of an abuse of authority by that officer. Those findings are not unreasonable.
The petition for writ of habeas corpus and the supplemental petition are both denied. CT Page 253
Samuel S. Freedman Judge Trial Referee