[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On April 24, 2001, the petitioner filed a petition for a writ of habeas corpus, which challenges the petitioner's designation as a security risk group safety threat (hereinafter "SRGST") member and transfer from Enfield Correctional Institution to Northern Correctional Institution, a higher security level facility, as a result of two disciplinary reports. More specifically, the petitioner alleged at the habeas corpus trial that he was denied due process at his hearing on the two disciplinary reports because he was denied the opportunity to present witnesses. The respondent denies the petitioner's claims and asserts that the petitioner was afforded all process which is due. For the reasons set forth more fully below, the petition shall be denied.
This matter came before the court for trial on October 21, 2002. The petitioner and Department of Correction Lieutenant DeMaria testified at the habeas corpus trial. Additionally, the court received into evidence the following exhibits: copies of each of the two disciplinary reports. The court has reviewed all of the testimony and evidence and makes the following findings of fact.
 FINDINGS OF FACT
1. The petitioner was in custody of the Commissioner of Correction at the time he filed the present petition.
2. The petitioner is designated as a SRGST member and is incarcerated at Northern Correctional Institution as a result of two disciplinary reports issued on February 18, 2001.
3. On February 18, 2001, following an investigation, and based on information obtained from and verified by five (5) confidential informants whose reliability was good, the petitioner was charged with assaulting another inmate. Notice of the charge was delivered to the petitioner at 7:30 P.M., February 18, 2001. An investigator was CT Page 373 assigned to investigate the charge, and an advocate was assigned to the petitioner. The petitioner pleaded not guilty to the charge. Three (3) witnesses submitted written statements on behalf of the petitioner. On March 5, 2001, after a hearing and review of the submitted statements and confidential information, the petitioner was found guilty of assault and received several sanctions, but did not forfeit any good time. The petitioner received notice of the guilty finding and the basis therefore on March 5, 2001. The petitioner unsuccessfully appealed the guilty finding to the warden.
4. On February 18, 2001, as a result of the investigation into the aforementioned assault, and based on information obtained from and verified by five (5) confidential informants whose reliability was good, the petitioner was charged with being a SRGST member. Notice of the charge was delivered to the petitioner at 7:30 P.M., February 18, 2001. An investigator was assigned to investigate the charge, and an advocate was assigned to the petitioner. The petitioner pleaded not guilty to the charge. Three (3) witnesses submitted written statements on behalf of the petitioner. On March 5, 2001, after a hearing and review of the submitted statements and confidential information, the petitioner was found guilty of being a SRGST member and received several sanctions, but did not forfeit any good time. The petitioner received notice of the guilty finding and the basis therefore on March 5, 2001. The petitioner unsuccessfully appealed the guilty finding to the warden.
 DISCUSSION OF LAW
"Habeas corpus provides a special and extraordinary legal remedy for illegal detention. The deprivation of legal rights is essential before the writ may be issued. Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." (Internal citations and quotation marks omitted.)Vincenzo v. Warden, 26 Conn. 132, 137-38 (1991).
"A prison inmate can be deprived of his statutory good time credit only if he is offered procedural due process protection. See Superintendentv. Hill, 472 U.S. 445, 453 (1985); Wolff v. McDonnell, 418 U.S. 539,558, 94 S.Ct (1974). Thus, when a prison inmate is threatened with a loss of statutory good time credits, the inmate must receive (1) advanced written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call CT Page 374 witnesses and to present documentary evidence in his defense and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.
"Due process is satisfied if the prison disciplinary board shows some evidence that supports the revocation of good time credit. Ascertainingwhether this standard is satisfied does not require examination of theentire record, independent assessment of the credibility of witnesses, orweighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (Emphasis added.) (Internal citations and quotation marks omitted.) Jolley v. Commissioner of Correction,60 Conn. App. 560, 561, 760 A.2d 146 (2000).
"[I]n identifying the safeguards required by due process, the [United States Supreme] Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation. Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens. . . . Because the written statement mandated by Wolff requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings ordecisions with respect to appropriate punishment are subject to secondguessing upon review." (Emphasis added.) (Internal citations omitted.)Superintendent v. Hill, supra, 472 U.S. 454-55.
The petitioner claims that he was denied the opportunity to present witnesses. The evidence in this case shows that the petitioner was able to present evidence in the form of witness's statements at the disciplinary hearing. Thus, the petitioner's claim fundamentally is that his right to due process was violated because he was only able to submit documentary evidence and not in-person testimony.
In Wolff, the court noted that "[c]onfrontation and cross-examination present greater hazards to institutional interests. If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls. Proceedings would inevitably be longer and tend to unmanageability. These procedures are essential in criminal trials where the accused, if found guilty, may CT Page 375 be subjected to the most serious deprivations, or where a person may lose his job in society. But they are not rights universally applicable to all hearings. Rules of procedure may be shaped by consideration of the risks of error, and should also be shaped by the consequences which will follow their adoption. Although some States do seem to allow cross-examination in disciplinary hearings, we are not apprised of the conditions under which the procedure may be curtailed; and it does not appear that confrontation and cross-examination are generally required in this context. We think that the Constitution should not be read to impose the procedure at the present time and that adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination."
"Perhaps as the problems of penal institutions change and correctional goals are reshaped, the balance of interests involved will require otherwise. But in the current environment, where prison disruption remains a serious concern to administrators, we cannot ignore the desire and effort of many States . . . and the Federal Government to avoid situations that may trigger deep emotions and that may scuttle the disciplinary process as a rehabilitation vehicle. To some extent, the American adversary trial presumes contestants who are able to cope with the pressures and aftermath of the battle, and such may not generally be the case of those in the prisons of this country. At least, the Constitution, as we interpret it today, does not require the contrary assumption. Within the limits set forth in this opinion we are content for now to leave the continuing development of measures to review adverse actions affecting inmates to the sound discretion of corrections officials administering the scope of such inquiries.
"We recognize that the problems of potential disruption may differ depending on whom the inmate proposes to cross-examine. If he proposes to examine an unknown fellow inmate, the danger may be the greatest, since the disclosure of the identity of the accuser, and the cross-examination which will follow, may pose a high risk of reprisal within the institution. Conversely, the inmate accuser, who might freely tell his story privately to prison officials, may refuse to testify or admit any knowledge of the situation in question. Although the dangers posed by cross-examination of known inmate accusers, or guards, may be less, the resentment which may persist after confrontation may still be substantial. Also, even where the accuser or adverse witness is known, the disclosure of third parties may pose a problem. There may be a class of cases where the facts are closely disputed, and the character of the parties minimizes the dangers involved. However, any constitutional rule tailored to meet these situations would undoubtedly produce great litigation and attendant costs in a much wider range of cases. Further, in the last analysis, even within the narrow range of cases where CT Page 376 interest balancing may well dictate cross-examination, courts will be faced with the assessment of prison officials as to the dangers involved, and there would be a limited basis for upsetting such judgments. The better course at this time . . . is to leave these matters to the sound discretion of the officials of state prisons." (Internal citations omitted.) Wolff v. McDonnell, supra, 418 U.S. 567-69.
Clearly, the petitioner has no constitutional right to have witnesses present in-person testimony at disciplinary hearings. And while the petitioner was not sanctioned with the forfeiture of good time credits, the possibility or threat of such a loss underscores the prudence of comporting with the minimal procedural due process requirements. The record shows that the respondent fully complied with the due process requirements of Wolff and Hill. The petitioner received all required notices, had the opportunity to present witness testimony, albeit in the form of written statements, and there was a basis for the guilty findings. The petitioner has failed to make the required showing of a constitutional violation.
Accordingly, the petition for a writ of habeas corpus is denied.
 ___________________ S.T. FUGER, JR., JUDGE
CT Page 377