SUPERINTENDENT, MASSACHUSETTS CORREC-
TIONAL INSTITUTION AT WALPOLE *v.* HILL ET AL.

No. 84–438.   Argued March 25, 1985—Decided June 17, 1985

O'CONNOR, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined, and in Parts I, II, and III of which BRENNAN, MARSHALL, and STEVENS, JJ., joined. STEVENS, J., filed an opinion concurring in part and dissenting in part, in which BRENNAN and MARSHALL, JJ., joined, *post*, p. 457.

*Barbara A. H. Smith*, Assistant Attorney General of Massachusetts, argued the cause for petitioner. With her on the briefs were *Francis X. Bellotti*, Attorney General, and *Martin E. Levin*, Assistant Attorney General.

*Jamie Ann Sabino*, by appointment of the Court, 469 U. S. 1084, argued the cause for respondents. With her on the brief was *Richard B. Klibaner*.*

---

*Briefs of *amici curiae* urging reversal were filed for the United States by *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Wallace,* and *Kathleen A. Felton;* and for the State of California et al. by *John K. Van de Kamp*, Attorney General of California, *Steve White*, Chief Assistant Attorney General, *Arnold Overoye*, Assistant Attorney General, *William George Prahl* and *Susan J. Orton*, Deputy Attorneys General, *Charles A. Graddick*, Attorney General of Alabama, *Robert K. Corbin*, Attorney General of Arizona, *Anthony B. Ching*, Solicitor General, *Joseph L. Lieberman*, Attorney General of Connecticut, *Cornelius Tuohy*, Assistant Attorney General, *Michael A. Lilly*, Attorney General of Hawaii, *Neil Hartigan*, Attorney General of Illinois, *Jill Wine-Banks*, Solicitor General, *Linley E. Pearson*, Attorney General of Indiana, *Robert T. Stephan*, Attorney General of Kansas, *David Armstrong*, Attorney General of Kentucky, *William J. Guste, Jr.*, Attorney General of Louisiana, *Frank J. Kelley*, Attorney General of Michigan, *Lewis J. Caruso*, Solicitor General, *Hubert H. Humphrey III*, Attorney General of Minnesota, *Edwin Lloyd Pittman*, Attorney General of Mississippi, *Robert L. Gibbs*, Assistant Attorney General, *John Ashcroft*, Attorney General of Missouri, *John M. Morris, Mike Greely*, Attorney General of Montana, *Paul Douglas*, Attorney General of Nebraska, *Rufus L. Edmisten*, Attorney General of North Carolina, *Anthony J. Celebrezze, Jr.*, Attorney

JUSTICE O'CONNOR delivered the opinion of the Court.

Massachusetts inmates who comply with prison rules can accumulate good time credits that reduce the term of imprisonment. Mass. Gen. Laws Ann., ch. 127, § 129 (West 1974). Such credits may be lost "if a prisoner violates any rule of his place of confinement." *Ibid.* The question presented is whether revocation of an inmate's good time credits violates the Due Process Clause of the Fourteenth Amendment if the decision of the prison disciplinary board is not supported by evidence in the record. We conclude that where good time credits constitute a protected liberty interest, a decision to revoke such credits must be supported by some evidence. Because the record in this case contains sufficient evidence to support the decision of the disciplinary board, we reverse.

I

Respondents Gerald Hill and Joseph Crawford are inmates at a state prison in Walpole, Mass. In May 1982, they each received prison disciplinary reports charging them with assaulting another inmate. At separate hearings for each inmate, a prison disciplinary board heard testimony from a prison guard, Sergeant Maguire, and received his written disciplinary report. According to the testimony and report, Maguire heard an inmate twice say loudly, "What's going on?" The voice came from a walkway that Maguire could partially observe through a window. Maguire immediately opened the door to the walkway and found an inmate named Stephens bleeding from the mouth and suffering from a swollen eye. Dirt was strewn about the walkway, and Maguire viewed this to be further evidence of a scuffle. He saw three inmates, including respondents, jogging away together down the walkway. There were no other inmates

General of Ohio, *T. Travis Medlock,* Attorney General of South Carolina, *Mark V. Meierhenry,* Attorney General of South Dakota, *John Easton, Jr.,* Attorney General of Vermont, *Gerald L. Baliles,* Attorney General of Virginia, and *A. G. McClintock,* Attorney General of Wyoming.

in the area, which was enclosed by a chain link fence. Maguire concluded that one or more of the three inmates had assaulted Stephens and that they had acted as a group. Maguire also testified at Hill's hearing that a prison "medic" had told him that Stephens had been beaten. Hill and Crawford each declared their innocence before the disciplinary board, and Stephens gave written statements that the other inmates had not caused his injuries.

After hearing the evidence in each case, the disciplinary board found respondents guilty of violating prison regulations based on their involvement in the assault. App. 19, 27. The board recommended that Hill and Romano each lose 100 days of good time and be confined in isolation for 15 days. Respondents unsuccessfully appealed the board's action to the superintendent of the prison. *Id.*, at 23, 30. They then filed a complaint in the Superior Court, State of Massachusetts, alleging that the decisions of the board violated their constitutional rights because "there was no evidence to confirm that the incident took place nor was there any evidence to state that if the incident did take place the [respondents] were involved." *Id.*, at 10. After reviewing the record, the Superior Court concluded that "the Board's finding of guilty rested, in each case, on no evidence constitutionally adequate to support that finding." App. to Pet. for Cert. 8b. The Superior Court granted summary judgment for respondents and ordered that the findings of the disciplinary board be voided and the lost good time restored.

The Massachusetts Supreme Judicial Court affirmed. 392 Mass. 198, 466 N. E. 2d 818 (1984). Inmates who observe prison rules, the state court noted, have a statutory right to good time credits and the loss of such credits affects a liberty interest protected by the Due Process Clause of the Fourteenth Amendment. *Id.*, at 201, 466 N. E. 2d, at 821. The Supreme Judicial Court then observed that an entitlement to "judicial review of the sufficiency of the evidence to warrant

the board's findings" logically follows from *Wolff* v. *McDonnell*, 418 U. S. 539 (1974). 392 Mass., at 201, 466 N. E. 2d, at 821. Without deciding whether the appropriate standard of review is "some evidence" or the stricter test of "substantial evidence," *id.*, at 203, n. 5, 466 N. E. 2d, at 822, n. 5, the Supreme Judicial Court agreed with the trial judge that the record failed to present even "some evidence which, if believed, would rationally permit the board's findings." *Id.*, at 203, 466 N. E. 2d, at 822 (footnote omitted).

The Massachusetts Attorney General filed a petition for a writ of certiorari urging this Court to decide whether prison inmates have a due process right to judicial review of prison disciplinary proceedings or, alternatively, whether the standard of review applied by the state court was more stringent than is required by the Due Process Clause. Pet. for Cert. i, 20–21. We granted the petition, 469 U. S. 1016 (1984), and we now reverse.

## II

Petitioner first argues that the state court erred by holding that there is a constitutional right to judicial review of the sufficiency of evidence where good time credits are revoked in a prison disciplinary proceeding. *Ortwein* v. *Schwab*, 410 U. S. 656 (1973) *(per curiam)*, petitioner contends, found no denial of due process where a filing fee prevented claimants from obtaining judicial review of an administrative decision reducing welfare payments. Petitioner urges that a similar conclusion should apply here: respondents were afforded all the process due when they received a hearing before the disciplinary board. Cf. *id.*, at 659–660 (pretermination evidentiary hearing met requirements of due process despite lack of judicial review). Respondents answer by noting decisions of this Court which suggest that due process might require some form of judicial review of administrative decisions that threaten constitutionally protected liberty or property interests. See, *e. g.*, *St. Joseph Stockyards Co.* v. *United States*,

298 U. S. 38, 51–52 (1936); *Ng Fung Ho* v. *White*, 259 U. S. 276, 284–285 (1922).

The extent to which legislatures may commit to an administrative body the unreviewable authority to make determinations implicating fundamental rights is a difficult question of constitutional law. See, *e. g.*, *Califano* v. *Sanders*, 430 U. S. 99, 109 (1977); 5 K. Davis, Administrative Law Treatise § 28:3 (2d ed. 1984); Hart, The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic, 66 Harv. L. Rev. 1362, 1375–1378, 1388–1391 (1953). The *per curiam* opinion in *Ortwein* did not purport to resolve this question definitively; nor are we disposed to construe that case as implicitly holding that due process would never require some form of judicial review of determinations made in prison disciplinary proceedings. Cf. *Crowell* v. *Benson*, 285 U. S. 22, 87 (1932) (Brandeis, J., dissenting) ("under certain circumstances, the constitutional requirement of due process is a requirement of judicial process"). Whether the Constitution requires judicial review is only at issue if such review is otherwise barred, and we will not address the constitutional question unless it is necessary to the resolution of the case before the Court. See *Johnson* v. *Robison*, 415 U. S. 361, 366–367 (1974).

Assuming, *arguendo*, that a decision revoking good time credits would violate due process if it were not supported by some modicum of evidence, we need not decide today whether the Constitution also requires judicial review of a challenge to a decision on such grounds. The Supreme Judicial Court correctly observed, 392 Mass., at 201, 466 N. E. 2d, at 821, that this Court has not previously held that the Due Process Clause creates a right to judicial review of prison disciplinary proceedings. Although the opinion of the state court does speak in terms of a constitutional entitlement, careful examination of that opinion persuades us that judicial review was available to respondents pursuant to

Mass. Gen. Laws Ann., ch. 249, § 4 (West Supp. 1984), which provides in pertinent part:

> "A civil action in the nature of certiorari to correct errors in proceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal, may be brought in the supreme judicial or superior court."

Petitioner notes that there is no statutory provision for judicial review of decisions by a prison disciplinary board. Nonetheless, the Supreme Judicial Court has observed that " '[i]n the absence of a statutory method of judicial review, certiorari is an appropriate mode for correcting errors of law arising out of an administrative action.' " *Taunton Eastern Little League* v. *Taunton,* 389 Mass. 719, 720, n. 1, 452 N. E. 2d 211, 212, n. 1 (1983), quoting *Reading* v. *Attorney General,* 362 Mass. 266, 269, 285 N. E. 2d 429, 431 (1972). In the present case, the Supreme Judicial Court expressly stated that respondents, who framed their complaints as petitions for a " 'writ of habeas corpus ad testificandum,' " should have brought civil actions pursuant to § 4. 392 Mass., at 199, n. 2, 466 N. E. 2d, at 819, n. 2. The state court supported this conclusion by citing its previous decision in *Boston Edison Co.* v. *Board of Selectmen of Concord,* 355 Mass. 79, 242 N. E. 2d 868 (1968), and the decision of the Appeals Court of Massachusetts in *Cepulonis* v. *Commissioner of Correction,* 15 Mass. App. 292, 445 N. E. 2d 178 (1983).

*Boston Edison* relied on § 4 to review a challenge to the sufficiency of the evidence to support decisions by town selectmen denying rights-of-way for power lines. At the time *Boston Edison* was decided, § 4 allowed a party to petition the Supreme Judicial Court for a writ of certiorari on a claim "that the evidence which formed the basis of the action complained of or the basis of any specified finding or conclusion was as a matter of law insufficient to warrant such action,

finding or conclusion." Mass. Gen. Laws Ann., ch. 249, § 4 (West 1959). Petitioner correctly informed this Court that the quoted phrase and the writ of certiorari were abolished by 1973 amendments to § 4, 1973 Mass. Acts, ch. 1114, § 289. Tr. of Oral Arg. 25, 50–51. Somewhat inexplicably, petitioner failed to add that the 1973 amendments substituted "'a civil action in the nature of certiorari'" for the previously available writ, and did not narrow the relief formerly obtainable under the statute. See, *e. g.*, *Boston Edison Co.* v. *Boston Redevelopment Authority*, 374 Mass. 37, 47–49, 371 N. E. 2d 728, 737–738 (1977).

The second decision cited by the Supreme Judicial Court, *Cepulonis*, construed an inmate's challenge to a finding of a prison disciplinary board "as seeking review in the nature of certiorari" under § 4. 15 Mass. App., at 292, 445 N. E. 2d, at 178. *Cepulonis* did not address a due process claim; instead, the inmate contended that the disciplinary board's finding was not supported by "reliable evidence" as required by regulations of the Massachusetts Department of Corrections. *Id.*, at 293, 445 N. E. 2d, at 179. Thus, *Boston Edison* and *Cepulonis* relied on § 4 to provide an avenue for judicial review where an adjudicatory decision by a nonjudicial body was challenged as not supported by sufficient evidence. In those cases, the aggrieved parties argued that the evidence was insufficient to meet standards imposed by state law. See also *1001 Plays, Inc.* v. *Mayor of Boston*, 387 Mass. 879, 444 N. E. 2d 931 (1983) (§ 4 challenge to sufficiency of evidence to support denial of license for video game arcade); *McSweeney* v. *Town Manager of Lexington*, 379 Mass. 794, 401 N. E. 2d 113 (1980) (noting that appropriate standard varies according to nature of action sought to be reviewed).

Nothing in the opinion of the Supreme Judicial Court in this case suggests that § 4 would be unavailable where a party alleges that evidence is insufficient under a standard imposed by the Federal Constitution. Cf. 392 Mass., at 202–203, 466 N. E. 2d, at 821–822 (failure to provide for

review under state Administrative Procedure Act does not indicate legislative intent to preclude judicial review of sufficiency of evidence for disciplinary board decisions). Indeed, previous decisions by the Supreme Judicial Court indicate that §4 provides a means of review in state court where an administrative decision is challenged on federal constitutional grounds. See, *e. g., Taunton Eastern Little League* v. *Taunton, supra,* at 720–722, 452 N. E. 2d, at 212–213 (Establishment Clause challenge to rescission of beano license). We therefore interpret the opinion of the state court as holding that §4 provides a mechanism for judicial review of respondents' claims. Given the rule of judicial restraint requiring us to avoid unnecessary resolution of constitutional issues, see, *e. g., Ashwander* v. *TWA,* 297 U. S. 288, 346–347 (1936) (Brandeis, J., concurring), we decline to decide in this case whether due process would require judicial review.

## III

The issue we address is whether findings of a prison disciplinary board that result in the loss of good time credits must be supported by a certain amount of evidence in order to satisfy due process. Petitioner argues that the Supreme Judicial Court applied too strict a standard in reviewing the decision of the disciplinary board and that such decisions should be upheld unless they are arbitrary and capricious. Brief for Petitioner 5, 19–21; Pet. for Cert. i, 20–21. In *Wolff* v. *McDonnell,* 418 U. S. 539 (1974), the Court held that due process requires procedural protections before a prison inmate can be deprived of a protected liberty interest in good time credits. Petitioner does not challenge the holding below that Massachusetts law creates a liberty interest in good time credits. See also *Nelson* v. *Commissioner of Correction,* 390 Mass. 379, 456 N. E. 2d 1100 (1983) (statutory good time credits constitute a liberty interest protected by due process). Accordingly, we proceed on the assumption that the protections of the Fourteenth Amendment apply to the loss of the good time credits involved here, and direct

our inquiry to the nature of the constitutionally required procedures.

Where a prison disciplinary hearing may result in the loss of good time credits, *Wolff* held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. 418 U. S., at 563–567. Although *Wolff* did not require either judicial review or a specified quantum of evidence to support the factfinder's decision, the Court did note that "the provision for a written record helps to assure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental human rights may have been abridged, will act fairly." *Id.*, at 565. We now hold that revocation of good time does not comport with "the minimum requirements of procedural due process," *id.*, at 558, unless the findings of the prison disciplinary board are supported by some evidence in the record.

The requirements of due process are flexible and depend on a balancing of the interests affected by the relevant government action. *E. g., Cafeteria Workers* v. *McElroy*, 367 U. S. 886, 895 (1961). Where a prisoner has a liberty interest in good time credits, the loss of such credits threatens his prospective freedom from confinement by extending the length of imprisonment. Thus the inmate has a strong interest in assuring that the loss of good time credits is not imposed arbitrarily. 418 U. S., at 561. This interest, however, must be accommodated in the distinctive setting of a prison, where disciplinary proceedings "take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so." *Ibid.* Consequently, in identifying the safeguards required by due process, the Court has recognized the legitimate institutional needs of

assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation. See, *e. g., Ponte* v. *Real,* 471 U. S. 491 (1985); *Baxter* v. *Palmigiano,* 425 U. S. 308, 321–322 (1976); *Wolff* v. *McDonnell, supra,* at 562–563.

Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens. In a variety of contexts, the Court has recognized that a governmental decision resulting in the loss of an important liberty interest violates due process if the decision is not supported by any evidence. See, *e. g., Douglas* v. *Buder,* 412 U. S. 430, 432 (1973) *(per curiam)* (revocation of probation); *Schware* v. *Board of Bar Examiners,* 353 U. S. 232, 239 (1957) (denial of admission to bar); *United States ex rel. Vajtauer* v. *Commissioner of Immigration,* 273 U. S. 103, 106 (1927) (deportation). Because the written statement mandated by *Wolff* requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review.

We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced . . . ." *United States ex rel. Vajtauer* v. *Commissioner of Immigration,* 273 U. S., at 106. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could sup-

port the conclusion reached by the disciplinary board. See *ibid.; United States ex rel. Tisi* v. *Tod,* 264 U. S. 131, 133–134 (1924); *Willis* v. *Ciccone,* 506 F. 2d 1011, 1018 (CA8 1974). We decline to adopt a more stringent evidentiary standard as a constitutional requirement. Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. See *Wolff,* 418 U. S., at 562–563, 567–569. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, *id.,* at 556, and neither the amount of evidence necessary to support such a conviction, see *Jackson* v. *Virginia,* 443 U. S. 307 (1979), nor any other standard greater than some evidence applies in this context.

## IV

Turning to the facts of this case, we conclude that the evidence before the disciplinary board was sufficient to meet the requirements imposed by the Due Process Clause. The disciplinary board received evidence in the form of testimony from the prison guard and copies of his written report. That evidence indicated that the guard heard some commotion and, upon investigating, discovered an inmate who evidently had just been assaulted. The guard saw three other inmates fleeing together down an enclosed walkway. No other inmates were in the area. The Supreme Judicial Court found that this evidence was constitutionally insufficient because it did not support an inference that more than one person had struck the victim or that either of the respondents was the assailant or otherwise participated in the assault. 392 Mass., at 203–204, 466 N. E. 2d, at 822. This conclusion, however, misperceives the nature of the evidence required by the Due Process Clause.

The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board. Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing. Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary. Respondents relied only upon the Federal Constitution, and did not claim that the disciplinary board's findings failed to meet evidentiary standards imposed by state law. See *id.*, at 199, n. 2, 466 N. E. 2d, at 819, n. 2; Brief for Respondents 17. Because the determination of the disciplinary board was not so lacking in evidentiary support as to violate due process, the judgment of the Supreme Judicial Court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*It is so ordered.*

JUSTICE STEVENS, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, concurring in part and dissenting in part.

The Attorney General of Massachusetts is a member of a favored class of litigants. As the highest legal officer of a sovereign State, his professional comments on the law of Massachusetts are accorded special respect.[1] Partly for that reason, and partly because this Court in recent years has been inclined to lend a sympathetic ear to claims that state courts have accorded too much protection to the rights of prison inmates and criminal defendants, State Attorneys General have been disproportionately successful in persuading this Court to grant their petitions for certiorari

[1] See *Marino* v. *Ragen,* 332 U. S. 561, 562 (1947) *(per curiam).*

and to reverse state-court judgments of minimal national significance.[2]

Such favored treatment should give rise to a special duty to be meticulously forthright and accurate in advising the Court about relevant matters of state law affecting the specific questions that a State Attorney General asks this Court to review. A lawyer's greatest asset—his or her professional reputation—should not be squandered in order to achieve a favorable result in an individual case. I restate these simple truths because of my concern that the petitioner in this case and, indeed, the Court itself, may have attached greater importance to the correction of error in an isolated case than to the maintenance of standards that should govern procedures in this Court in all cases.

The Massachusetts Attorney General's petition for certiorari asked this Court to decide these two questions:

> "I. Whether prison inmates have a substantive due process right to judicial review of prison disciplinary board findings?
>
> "II. Whether, under the due process clause, the findings of a prison disciplinary board should be reviewed under a standard more stringent than review for action which is arbitrary, capricious, or an abuse of discretion?" Pet. for Cert. i.

Having granted certiorari and having had these two questions fully briefed and argued, the Court now correctly concludes that neither need be answered. It was obvious on the face of the Attorney General's petition for certiorari that the second question would not have merited review in this Court. That question—whether the Due Process Clause requires that a disciplinary board's findings of fact be reviewed under

---

[2] See, e. g., Florida v. Rodriguez, 469 U. S. 1 (1984) (per curiam); California v. Beheler, 463 U. S. 1121 (1983) (per curiam); Illinois v. Batchelder, 463 U. S. 1112 (1983) (per curiam); California v. Ramos, 463 U. S. 992 (1983); Illinois v. Andreas, 463 U. S. 765 (1983).

a more stringent standard than abuse of discretion—is not presented because the Massachusetts court did not apply a more stringent standard.[3]   The first question, however, may have merited our attention if there had been no state procedure for reviewing prison disciplinary board findings.

The first question in the Attorney General's certiorari petition was supported by the following argument: "A prison inmate has no general due process right to judicial review of disciplinary board findings for sufficiency of the evidence, and the creation of such a right is not consistent with those principles enunciated by this Court in the context of prison administration."   Pet. for Cert. 14.   Thus, although the right to judicial review was at the heart of the Attorney General's request that we grant certiorari, "somewhat inexplicably," *ante*, at 452, he did not mention that Massachusetts' law, wholly apart from the Federal Constitution, provides judicial review for the correction of errors "in proceedings

---

[3] The Massachusetts court expressly declined to apply a standard different than "some evidence" in this case.   Additionally, I note that virtually all Courts of Appeals that have ruled on the issue have concluded that some evidence must support a decision to revoke good-time credits.   See, *e. g.*, *Adams* v. *Gunnell*, 729 F. 2d 362, 370 (CA5 1984); *Inglese* v. *Warden, U. S. Penitentiary*, 687 F. 2d 362, 363 (CA11 1982); *Willis* v. *Ciccone*, 506 F. 2d 1011, 1018, 1019, n. 11 (CA8 1974); cf. *Rusher* v. *Arnold*, 550 F. 2d 896, 899 (CA3 1977).   One Circuit did adopt a "substantial evidence" standard a few years ago.   *Aikens* v. *Lash*, 514 F. 2d 55, 60–61 (CA7 1975) ("The term 'substantial evidence' need not be something prison officials should be overly concerned about"), vacated and remanded, 425 U. S. 947, modified, 547 F. 2d 372 (1976).   However, recent decisions of that court indicate that it may have modified the standard and that the modified version is applied much like the "some evidence" standard.   See *Brown-Bey* v. *United States*, 720 F. 2d 467, 469 (CA7 1983); *Dawson* v. *Smith*, 719 F. 2d 896, 900 (CA7 1983); *Jackson* v. *Carlson*, 707 F. 2d 943, 949 (CA7), cert. denied *sub nom. Yeager* v. *Wilkinson*, 464 U. S. 861 (1983).   In any event, this minor dispute hardly qualifies as a one of national importance.   Cf. *Ponte* v. *Real*, 471 U. S. 491, 523, n. 21 (1985) (MARSHALL, J., dissenting) ("Reserving the argument docket for cases of truly national import would go far toward alleviating any workload problems allegedly facing the Court").

which . . . are not otherwise reviewable by motion or appeal." Mass. Gen. Laws Ann., ch. 249, §4 (West Supp. 1984). Of course, we need not "decide in this case whether due process would require judicial review," *ante*, at 453, if state law provides judicial review, and the Court today correctly acknowledges this settled rule of judicial restraint. See *ante*, at 450–453. The Court's proper disposition of the primary question presented, however, does not adequately explain how this case arrived on our argument docket.

The Attorney General's petition for certiorari did not mention the existence of state procedures allowing judicial review. In his argument brief, the Attorney General did cite the state statute in a somewhat opaque footnote. See Brief for Petitioner 6, n. 2. That footnote, however, merely confirms the presumption that he was aware of his own State's procedure. Moreover, the Attorney General omitted any reference to the fact that less than one month before this case was argued before the Supreme Judicial Court of Massachusetts, that court rejected, in the context of a challenge to prison disciplinary hearings, the Attorney General's defense that "the *only* judicial review available to the plaintiffs is an action in the nature of certiorari pursuant to G. L. c. 249, §4." *Nelson* v. *Commissioner of Correction*, 390 Mass. 379, 381–382, 387–388, n. 12, 456 N. E. 2d 1100, 1102, 1106, n. 12 (1983) (emphasis added).

"When the prison Superintendent petitioned for certiorari, he had a heavy burden of explaining why this Court should intervene in what amounts to a controversy between the Supreme Judicial Court of Massachusetts and that State's prison officials." *Ponte* v. *Real*, 471 U. S. 491, 502 (1985) (STEVENS, J., concurring). Even the casual student of this Court is aware that "[t]his Court's review . . . is discretionary and depends on numerous factors other than the perceived correctness of the judgment we are asked to review," *Ross* v. *Moffitt*, 417 U. S. 600, 616–617 (1974), and that we "do not grant a certiorari to review evidence and discuss

specific facts." *United States* v. *Johnston,* 268 U. S. 220, 227 (1925).[4]   It is not unreasonable to expect a State's highest legal officer to know the State's law and to bring to this Court's attention the rules of state law that might affect the sound exercise of our discretion to grant certiorari, or that might demonstrate that we granted the writ improvidently.[5]

The Court now recognizes that the Massachusetts Attorney General "somewhat inexplicably" failed to provide the Court with critical information about Massachusetts law, but that recognition does not affect its disposition of the case.   In view of the fact that petitioner has not prevailed on either question that is presented by his certiorari petition, one might have expected the judgment of the Supreme Judicial Court of Massachusetts to be affirmed.   The Court has frequently admonished litigants that they may not obtain a reversal on a ground not urged in the petition for certiorari.[6] Instead of following the practice dictated by our prior cases, however, the Court undertakes its own *de novo* review of the record and concludes that the evidence was not constitutionally insufficient.[7]   I continue to believe that such a task is

---

[4] *Ponte* v. *Real,* 471 U. S., at 501–502 (STEVENS, J., concurring) ("The merits of an isolated case have only an oblique relevance to the question whether a grant of certiorari is consistent with the sound administration of this Court's discretionary docket").

[5] Cf. *Board of License Comm'rs of Tiverton* v. *Pastore,* 469 U. S. 238 (1985) *(per curiam).*   See this Court's Rule 34.1(g) (a brief on the merits shall contain "a concise statement of the case containing all that is material to the consideration of the question presented"); Rule 35.5 (supplemental brief may be filed to point out "late authorities, newly enacted legislation, or other intervening matters").

[6] *J. I. Case Co.* v. *Borak,* 377 U. S. 426, 428–429 (1964); *Carpenters* v. *NLRB,* 357 U. S. 93, 96 (1958); *Irvine* v. *California,* 347 U. S. 128, 129–130 (1954).

[7] Thus, the Court not only excuses the Attorney General's error but actually rewards him by acting as "the High Magistrate," *California* v. *Carney,* 471 U. S. 386, 396 (1985) (STEVENS, J., dissenting), and by reversing "fact-bound errors of minimal significance." *Ibid.*

not appropriate for this Court even if a diligent search will disclose error in the record. Cf. *United States* v. *Hasting*, 461 U. S. 499, 512 (1983) (STEVENS, J., concurring in judgment). I consider it particularly unwise to volunteer an advisory opinion on the sufficiency of the evidence when, on remand, the state court remains free to reinstate its judgment if it concludes that the evidence does not satisfy the standards required by state law.[8] Once again, however, the Court places a higher value on the rendition of a volunteered advisory opinion than on the virtues of judicial restraint.

Accordingly, while I join Parts I, II and III of the Court's opinion, I respectfully dissent from Part IV and its judgment.

---

[8] Cf. *Massachusetts* v. *Upton*, 466 U. S. 727 (1984), on remand, *Commonwealth* v. *Upton*, 394 Mass. 363, 370–373, 476 N. E. 2d 548, 550–551 (1985); *California* v. *Ramos*, 463 U. S. 992 (1983), on remand, *People* v. *Ramos*, 37 Cal. 3d 136, 150–159, 689 P. 2d 430, 437–444 (1984), cert. denied, 471 U. S. 1119 (1985); *South Dakota* v. *Neville*, 459 U. S. 553 (1983), on remand, *State* v. *Neville*, 346 N. W. 2d 425, 427–429 (SD 1984); *Washington* v. *Chrisman*, 455 U. S. 1 (1982), on remand, *State* v. *Chrisman*, 100 Wash. 814, 817–822, 676 P. 2d 419, 422–424 (1984) (en banc).