165 F.3d 32
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael FORD, Petitioner-Appellant,
v.
Craig HANKS, Respondent-Appellee.
 No. 97-2497.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 6, 1998*.
Decided Nov. 9, 1998.
 
 Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. No. TH 97-049-C M/F. Larry J. McKinney, Judge.
 Before Hon. THOMAS E. FAIRCHILD, Hon. WILLIAM J. BAUER, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Michael Ford, a prisoner at the Wabash Valley Correctional Facility ("WVCF") in Carlisle, Indiana, was charged with conspiring to riot and was given two years in disciplinary segregation. He exhausted his administrative remedies and then filed a petition for a writ of habeas corpus. The district court summarily denied the petition. On appeal, Ford argues that no evidence supported the prison hearing officer's conclusion that Ford was involved in the conspiracy. Ford also seeks leave to proceed in forma pauperis. We grant him such leave, and affirm the district court's denial of his petition.
 
 
 2
 During the spring and summer of 1986, WVCF prison officials became concerned about the potential for riot in response to the planned execution of an inmate named Smith. Prison staff were ordered to observe and identify inmates who might become involved in plans to riot. On May 20, 1986, prison officials found a letter from an unknown inmate to "Shaka" outlining a plan to disrupt the prison in response to Smith's execution. Ford sought permission to visit with inmate Mark Douglas, who was known as "Shaka," during this period. Ford was also seen meeting with other prisoners during mealtime in a way that appeared suspicious to prison officials, and a search of Ford's cell turned up photographs of Ford in the company of Douglas and another inmate named Bellamy. For security reasons, officials made plans to transfer Ford, Douglas, and eight other inmates suspected of conspiring to riot, including Bellamy, to the Maximum Control Center in Westville, Indiana.
 
 
 3
 On the day of the transfer the ten inmates were collected in preparation for the move. According to an incident report, the first five inmates were loaded onto a transport van without problems. As the second group including Ford, Douglas and Bellamy was being readied, Bellamy suddenly became belligerent and began threatening the deaths of prison officials in retribution for Smith's execution. Ford and the rest of the five inmates joined in, echoing the threats. After a hearing, the prison disciplinary board found that Ford was among those who had conspired to riot. Ford contends that, regardless of whether there was a conspiracy, there is no evidence that he was part of it, and that prison officials violated his due process rights by sentencing him to two years of disciplinary segregation based on this skimpy record.
 
 
 4
 A threshold question is whether Ford's two-year assignment to segregation is a deprivation of a liberty interest under Sandin v. Conner. 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). We assume without deciding that it may be, and like the district court move on to the issue of whether sufficient evidence supported the prison board's finding that Ford had conspired to riot. In evaluating whether the decision reached by a prison disciplinary board is adequately supported, "the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445, 455-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (emphasis added). The gist of Ford's argument is that he was punished merely on the basis of his associations, rather than his actions. Indeed, some of the evidence cited by the government, such as the photographs of Ford with Douglas and Bellamy, merely proves association, although it is relevant because Ford is more likely to have conspired with fellow gang members than with strangers. But the evidence goes beyond mere association, to actions Ford took that support the finding that he participated in the attempt to plan a riot: he sought a meeting with Douglas, the addressee of the May 20 letter who was named as a key figure in the planned disruption; and he joined Bellamy and Douglas in threatening to kill prison staff in retaliation for the upcoming execution. While the evidence that Ford participated in the riot plan is not overwhelming, it meets the requirements of due process.
 
 
 5
 The motion for leave to proceed in forma pauperis is GRANTED, and the judgment of the district court is AFFIRMED.
 
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R.App. P. 34(a); Cir. R. 34(f)