[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On January 5, 1999, the petitioner filed an amended petition, which alleges that the respondent warden denied his right to due process under the Fifth and Fourteenth Amendments of the United States Constitution, as well as Article I, Sections 8, 9 and 10 of the Connecticut Constitution and the Connecticut General Statutes. The gravamen of the petitioner's complaint is that there was a lack of any evidence to support the respondent finding the petitioner guilty in a prison disciplinary proceeding, which in the petitioner's case resulted in the imposition of sanctions, including his designation as a Security Risk Group Safety Threat Member ("SRGSTM") and the forfeiture of earned statutory good time. The petitioner seeks to have the SRGSTM designation overturned, have the forfeited good time credits restored and have the disciplinary reports expunged from his records. The respondent warden denies the petitioner's claims and asserts that the petitioner was afforded all constitutional protections throughout all proceedings at issue in this habeas corpus petition.
"Habeas corpus provides a special and extraordinary legal remedy for illegal detention. The deprivation of legal rights is essential before the writ may be issued. Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." (Internal citations and quotation marks omitted.)Vincenzo v. Warden, 26 Conn. 132, 137-38, 599 A.2d 31 (1991).
"A prison inmate can be deprived of his statutory good time credit only if he is offered procedural due process protection. See Superintendentv. Hill, 472 U.S. 445, 453, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); Wolffv. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Thus, when a prison inmate is threatened with a loss of statutory good time credits, the inmate must receive (1) advanced written notice of the CT Page 14034 disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.
"Due process is satisfied if the prison disciplinary board shows some evidence that supports the revocation of good time credit. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (Internal citations and quotation marks omitted.) Jolley v. Commissioner of Correction, 60 Conn. App. 560, 561,760 A.2d 146 (2000).
"[I]n identifying the safeguards required by due process, the [United States Supreme] Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation. Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens. . . . Because the written statement mandated by Wolff requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review." (Internal citations omitted.)Superintendent v. Hill, supra, 472 U.S. 454-55.
On May 19, 1998, the petitioner received a disciplinary report, arising out of a May 12, 1998 incident between 9:30 and 10:00 P.M., for the charge of being a security risk group safety threat member.[1] Resp't Ex. 1. The charge stemmed from an attack on an inmate, Cristobal Diaz, who was stabbed approximately twelve (12) times. Id., at 1. The investigation into that attack led to the determination that the attack was a Latin King, Security Risk Group related incident. Id. The investigation also determined that the petitioner "was involved in the conspiracy to attack inmate Diaz, specifically by being an accessory to the assault by distracting the Unit Officers while the assault took place." Id.
CT Page 14035
Written notice of the disciplinary report was delivered to the petitioner on May 19, 1998. Id. The disciplinary investigation report shows that the petitioner was informed of the process of the investigation and hearing, requested an advocate, provided the investigator with his version of the incident, and requested three witnesses, including the victim of the attack. Id., at 3. The investigation report indicates that "[t]hree confidential informants stated [to the investigator] that [the petitioner] was involved with the stabbing of [the victim]. One [confidential informant] stated that [the petitioner] conspired with [inmate] Rigual before the stabbing on how, when and where it was to be done. [The petitioner] himself stated that he was talking to the officers during the suspected time of the stabbing. [The petitioner's] distracting of the officers played a major role in the stabbing." Id., at 4.
All three of the petitioner's disciplinary report witnesses provided written statements in lieu of testimony at the disciplinary hearing.Id., at 5-7. The petitioner had the assistance of an advocate to investigate the incident and prepare for the hearing. Id., at 8 and 9. The disciplinary process summary report indicates that the petitioner was present at the disciplinary hearing, that confidential information was utilized, the reliability of which was indicated as being "very good," and that the petitioner's three witnesses' statements were before the hearing officer. Id., at 10-11. The hearing officer stated as the basis for his guilty finding the confidential information, which again was described as being "very reliable." id., at 11. A written copy of the disciplinary process summary report was delivered to the petitioner subsequent to the guilty finding. Id.; see also Resp't Ex. 2.
At the habeas corpus trial, the court heard testimony from the petitioner, correctional counselor Rodriguez, Captain Irizarry and Lieutenant Emanuel. The petitioner reiterated his claim that there was no evidentiary or factual basis to accuse the petitioner of intentionally distracting correction officers so that the attack could take place. Tr. (July 9, 2002), at 10. The petitioner also claimed that the officer he was accused of distracting "made a statement that . . . there wasn't any inmate in front of the main control distracting from the time of nine-fifteen to ten p. m. The petitioner was also summoned by the [correction officer] to come over and speak to him." Id. The petitioner alleged that there was an inconsistency in the time frame in the Officer Rodriguez's statement and the disciplinary report, noting that the Officer Rodriguez would testify that no one distracted him from 9:15 to 10:00 P.M. Id.
Officer Rodriguez, now a counselor, testified that at the time the CT Page 14036 assault occurred, the petitioner was conversing with him in front of the officer's station. Id., at 12. Captain Irizarry, the security risk group coordinator for the Department of Correction, testified regarding the process used to identify inmates who are involved in gangs (i.e., security risk groups). id., at 19. Captain Irizarry testified that the Department of Correction identifies and tracks gang members "to insure the safety of [correction] staff, the safety of the facilities, as well as the inmate population, and by tracking gang members we can provide the safety for those individuals."[2] Id.
Captain Irizarry also testified regarding confidential informants and the process utilized to establish the reliability of information provided by confidential informants. Id., at 21 and 28-29. Captain Irizarry testified that during the course of the investigation into the attack, "it was determined that [the petitioner's] place in the incident was to distract the officers from being able to complete their duties. It wasn't where it was out and blatant, it was something dealing with the normal operations that the officers deal with on a day-to-day basis. [The petitioner] engaged them into conversation where they were not able to see the incident that took place. Also, during the course of the investigation, several of the individuals that were interviewed identified [the petitioner] as being one of the authors of the hit that took place, the assault that was carried out on [the victim], and he was actually identified as giving the authority, with another inmate, for the assault to take place." Id., at 26. The identification of the petitioner as having authorized the attack was obtained from several reliable confidential informants. Id., at 26-27.
Lieutenant Emanuel, the hearing officer who presided over the petitioner's disciplinary hearing, testified that the standard upon which disciplinary decisions are based is the "sum of the evidence." Id., at 50. Lieutenant Emanuel also testified about how confidential informants establish reliability and how such information is utilized by him as a hearing officer. Id., at 55-56. Lieutenant Emanuel specifically found the confidential information provided by three informants to be very reliable. Id., at 56; Resp't Ex. 1, at 11. In the petitioner's case, Lieutenant Emanuel's basis for his guilty finding was "the information in totality that was given to [him], the incident report package, the confidential information." Tr. (July 9, 2002), at 57. Lastly, Lieutenant Emanuel testimony shows that the minimal due process requirements ofWolff were complied with.
Based upon the foregoing, this court first finds credible the testimony proffered by Counselor Rodriguez, Captain Irizarry and Lieutenant Emanuel. The petitioner's due process claim in this matter ultimately CT Page 14037 fails because the petitioner received advanced written notice of the disciplinary charges, an opportunity to call witnesses and to present documentary evidence in his defense, and a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action. The respondent warden has shown that there is some evidence that supports the conclusion reached by the disciplinary hearing officer and supports the revocation of good time credits. As to the petitioner's request to have the SRGSTM designation removed, this court finds that claim to be moot, as the commissioner of correction has allowed the petitioner to renounce the SRGSTM designation applied as a result of the disciplinary hearing at issue in this habeas corpus petition. Id., at 23-25.
Having failed to establish any constitutional violations, the petition seeking habeas corpus relief is denied.
 ___________________ BARRY, JUDGE TRIAL REFEREE