[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 7, 2002, the petitioner filed a petition seeking habeas corpus relief. The habeas corpus petition challenges a disciplinary report the petitioner received, which resulted in the forfeiture of ninety (90) days of good time credits, the loss of both commissary and telephone privileges for ninety (90) days, as well as placement in punitive segregation for fifteen (15) days, and alleges that the respondent warden has retaliated against the petitioner for having pursued a federal lawsuit against the Department of Correction. The petition also raises a claim that the Department of Correction is deliberately treating the petitioner with indifference because of his sexual orientation. The respondent warden denies the petitioner's claims and asserts that the petitioner was afforded all constitutional protections throughout all proceedings at issue in this habeas corpus petition.
"Habeas corpus provides a special and extraordinary legal remedy for illegal detention. The deprivation of legal rights is essential before the writ may be issued. Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." (Internal citations and quotation marks omitted.)Vincenzo v. Warden, 26 Conn. 132, 137-38, 599 A.2d 31 (1991).
"A prison inmate can be deprived of his statutory good time credit only if he is offered procedural due process protection. See Superintendentv. Hill, 472 U.S. 445, 453, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); Wolffv. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Thus, when a prison inmate is threatened with a loss of statutory good time credits, the inmate must receive (1) advanced written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense and (3) a written statement by CT Page 14596 the fact finder of the evidence relied on and the reasons for the disciplinary action.
"Due process is satisfied if the prison disciplinary board shows some evidence that supports the revocation of good time credit. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (Internal citations and quotation marks omitted.) Jolley v. Commissioner of Correction, 60 Conn. App. 560, 561,760 A.2d 146 (2000).
"[I]n identifying the safeguards required by due process, the [United States Supreme] Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation. Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens. . . . Because the written statement mandated by Wolff requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review." (Internal citations omitted.)Superintendent v. Hill, supra, 472 U.S. 454-55.
On May 4, 1998, the petitioner received a disciplinary report charging him with Insulting Language or Behavior during an incident that occurred on that same date. Resp't Ex. A, at 1. On that date, Captain Saundry received a handwritten letter from the petitioner, said letter repeatedly calling Correction Officer Bulger a liar and once referring to him as a "corrupt fuck." Id., at 3. The petitioner received notice of the charge on May 5, 1998. Id. The petitioner pleaded not guilty to the charge, was assigned an advocate to assist him during the investigation into the disciplinary report, requested statements from three inmate witnesses, and provided a written statement of his version of the incident.
In his written statement submitted in opposition to the disciplinary report, the petitioner admits that his hostility, as expressed in the letter to Captain Saundry, was appropriate because of the "long-standing, confrontational relationship" between the petitioner and CT Page 14597 Captain Saundry. Id., at 7. The petitioner also alleged that Captain Saundry was vindictive and retaliating against the petitioner because of a federal lawsuit the petitioner had filed, and that the petitioner was being harassed because of his sexual orientation. Id.
The disciplinary investigation report shows that the petitioner pleaded not guilty because he thought his statements were not insulting. Id., at 9. The petitioner reiterated his allegation that the disciplinary report was retaliation from Captain Saundry for the federal lawsuit. Id., at 9. While the advocate investigation report indicates that the petitioner requested statements from three inmates; Id., at 5; the disciplinary investigation report indicates that the petitioner did not request witnesses for the disciplinary hearing. Id., at 9. The investigator concluded his report by noting that "[i]nmate Smith wrote a letter which referred to a staff member in an abusive manner" and recommended both a "guilty" finding and sanctions. Id., at 10.
The disciplinary process summary report shows that the hearing was originally scheduled for May 13, 1998, but was continued to May 27, 1998, due to the unavailability of the petitioner's advocate. Id., at 11. The petitioner's chosen advocate also was not present on May 27, 1998, so that the petitioner was assigned the services of another advocate. Id. None of the three potential witnesses identified by the petitioner in the advocate investigation report submitted statements.Id., at 12. The hearing officer, Lieutenant Meulemans, indicated as the basis for his decision that the petitioner did not deny writing the letter containing language which was abusive and that the petitioner did not feel the language was abusive. Id.
At the habeas corpus trial, the petitioner testified that he viewed the letter as a complaint against a staff member and that he wrote the letter containing the insulting language "to express [his] feelings[.]" Tr. (Aug. 7, 2002), at 17. In other words, the petitioner continues to claim authorship of the offensive language while denying that the use of phrase "corrupt fuck" is somehow abusive. The petitioner's logic eludes this court.
The evidence in this matter shows that the petitioner received advanced written notice of the disciplinary charges, an opportunity to call witnesses and to present documentary evidence in his defense, and a written statement by the fact finder of the evidence relied upon and the reasons for the disciplinary action. This court finds, therefore, that the respondent complied with the due process requirements. And as to the petitioner's claims that the respondent is deliberately treating the petitioner with indifference because of his sexual orientation and has CT Page 14598 retaliated against the petitioner for having litigated against the respondent, this court finds that the record is devoid of any evidence to support the claims that such alleged deliberate indifference or retaliation amount to cruel and unusual punishment in violation of theeighth amendment to the United States constitution.
Based upon the foregoing, the petition for habeas corpus is denied because the petitioner has failed to establish any constitutional violations.
___________________ BARRY, JUDGE TRIAL REFEREE CT Page 14599