[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On December 8, 1998, the petitioner filed a petition for a writ of habeas corpus, which alleges that his confinement is illegal because the disciplinary process utilized by the respondent violated the petitioner's right to free speech under the First Amendment of the United States Constitution. The petitioner also alleges that the respondent has violated the petitioner's due process rights. All claims arise out of two disciplinary reports issued to the petitioner on June 26, 1998.
The petitioner, who was in custody of the Commissioner of Correction at the time he filed the present petition and has remained incarcerated, received two separate disciplinary reports on June 26, 1998. The first disciplinary report charged the petitioner with contraband, a charge arising out of two correction officers observing the petitioner on video surveillance to have passed then unknown items to another inmate, Edward Figueroa, in a recreational yard within the correctional facility. Resp't Ex. 1, at 4. This other inmate was then observed hiding these items first on his person and then in the recreational yard. Id. A search of the recreational yard resulted in the discovery and confiscation of sixteen (16) metal pieces and several spools of wire. Id., at 1.
The second disciplinary report charged the petitioner with conspiracy to escape. Resp't Ex. 2, at 1. The charge of conspiracy to escape was based on the recovery, as a result of the shakedown done in conjunction with the aforementioned search of the recreational yard, of contraband recovered from one of the petitioner's sneakers. The contraband in the form of a letter contained, in the respondent's analysis, plans to break another inmate out of custody as well as threats to the safety of officers. Id.
As a result of the first disciplinary report, the petitioner was found guilty and received the following sanctions: fifteen (15) days punitive segregation and the loss for sixty (60) days of both mail and visitation privileges. Resp't Ex. 1, at 7. The petitioner was also found guilty in CT Page 16615 the second disciplinary report and received the following sanctions: loss of ninety (90) days of good time; fifteen (15) days punitive segregation; loss for sixty (60) days of mail privilege; and loss for ninety (90) days commissary privileges. Resp't Ex. 2, at 7. The petitioner's appeals from both disciplinary reports to the warden were unsuccessful and the hearing officers' decisions were affirmed in both cases. Resp't Ex. 1, at 9; Resp't Ex. 2, at 14.
"Habeas corpus provides a special and extraordinary legal remedy for illegal detention. The deprivation of legal rights is essential before the writ may be issued. Questions which do not concern the lawfulness of the detention cannot properly be reviewed on habeas corpus. When a habeas petition is properly before a court, the remedies it may award depend on the constitutional rights being vindicated. Further, any remedy must be commensurate with the scope of the constitutional violations that have been established." (Internal citations and quotation marks omitted.)Vincenzo v. Warden, 26 Conn. 132, 137-38, 599 A.2d 31 (1991).
"A prison inmate can be deprived of his statutory good time credit only if he is offered procedural due process protection. See Superintendentv. Hill, 472 U.S. 445, 453, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985); Wolffv. McDonnell, 418 U.S. 539, 558, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Thus, when a prison inmate is threatened with a loss of statutory good time credits, the inmate must receive (1) advanced written notice of the disciplinary charges, (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and to present documentary evidence in his defense and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.
"Due process is satisfied if the prison disciplinary board shows some evidence that supports the revocation of good time credit. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." (Internal citations and quotation marks omitted.) Jolley v. Commissioner of Correction, 60 Conn. App. 560, 561,760 A.2d 146 (2000).
"[I]n identifying the safeguards required by due process, the [United States Supreme] Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation. CT Page 16616 Requiring a modicum of evidence to support a decision to revoke good time credits will help to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens. . . . Because the written statement mandated by Wolff requires a disciplinary board to explain the evidence relied upon, recognizing that due process requires some evidentiary basis for a decision to revoke good time credits will not impose significant new burdens on proceedings within the prison. Nor does it imply that a disciplinary board's factual findings or decisions with respect to appropriate punishment are subject to second-guessing upon review." (Internal citations omitted.)Superintendent v. Hill, supra, 472 U.S. 454-55.
As to the first disciplinary report, notice of the charge of contraband was delivered to the petitioner the evening of the offense date, June 26, 1998. Resp't Ex. 1, at 1. The investigator assigned to the first disciplinary report interviewed the petitioner, who stated that he did not pass anything and that all he was doing was standing against the wall. Id., at 3. The disciplinary investigation report also indicates that the petitioner did not request any witnesses, that he advised the investigator that he had not received a copy of the disciplinary report, and that the investigator delivered an additional copy of the disciplinary report to the petitioner on June 29, 1998. Id., at 1 and 3. The petitioner was assigned an advocate, Counselor Soto, who interviewed the petitioner and recorded his version of the events. Id., at 5. The petitioner denied taking anything into the recreational yard or passing anything to anyone. Id. Counselor Soto also interviewed inmate Figueroa, who stated that he did not see the petitioner bring or pass anything in the recreational yard. Id., at 6. Counselor Soto reviewed the surveillance video tape, which showed the petitioner shaking hands with inmate Figueroa a couple of times, though Counselor Soto could not clearly see items being passed from one inmate to another. Id.
The disciplinary process report indicates that the matter was continued for the purpose of further investigation. Id., at 7. The hearing officer advised the petitioner that he had reviewed the surveillance tapes, which showed the petitioner shaking hands with inmate Figueroa and an object being dropped on the ground. Id., at 8. The petitioner stated to the hearing officer that inmate Figueroa handed the contraband to the petitioner, who then threw it down. Id. The hearing officer was also presented with confidential information from a reliable source that the petitioner had the contraband. Id., at 7-8. The disciplinary process summary report states the evidence relied on by the hearing officer and the reasons for the guilty finding and disciplinary action. Id., at 8. Based upon the foregoing, this court finds that all due process requirements were adhere with regard to the first disciplinary report and CT Page 16617 that there was some evidence to support the guilty finding and imposition of sanctions.
As to the second disciplinary report at issue in this habeas corpus, the petitioner claims that his right to free speech under theFirst Amendment of the United States Constitution was violated by the respondent. This court first notes that a review of the disciplinary report packet shows that the petitioner received advanced written notice of the disciplinary charges, that he had an opportunity to call witnesses and to present documentary evidence in his defense, and that he was given a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Resp't Ex. 2, at 1-8. Thus, the due process requirements commensurate with disciplinary proceedings which may result in the loss of good time were fully complied with.
Addressing the petitioner's First Amendment claim, "[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system. Thus, challenges to prison restrictions that have an impact upon first amendment interests must be analyzed in terms of the legitimate policies and goals of the corrections system. Although deterrence of crime and rehabilitation are legitimate penal objectives, central to all other corrections goals is the institutional consideration of internal security with the corrections facilities themselves.First amendment rights do not evaporate upon the claim of internal security, however, and the restrictions imposed must be no greater than necessary or essential to the protection of the governmental interest involved." (Internal citations and quotation marks omitted.) Roque v. Warden,181 Conn. 85, 97-98, 434 A.2d 348 (1980).
"[T]he [United States] Supreme Court sanctioned the curtailment of prisoners' first amendment associational rights by applying the following test: Associational rights may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations, whether through group meetings or otherwise, possess the likelihood of disruption to prison order orstability, or otherwise interfere with the legitimate penologicalobjectives of the prison environment. We believe that the same test is appropriate where the prisoner's freedom of speech is concerned." (Emphasis added.) (Internal citation and quotation marks omitted.) Id., at 98.
"Activity and literature which are likely to have [the] effect [of the eventual confrontation of prisoners and prison staff] cannot be countenanced in the prison setting. Nor must prison officials wait and CT Page 16618 see if such literature does in fact have that effect. It is essential that administrators be given some latitude in anticipating the probable consequences of allowing certain speech or the dissemination of particular written matter in the prison environment. . . . Where the violation of prison rules and regulations is clear and the threat to security is serious, . . . prison authorities need not only act to remove the threat of the existing but may, by the imposition of penalties, deter future violations. By imposing punishment in addition to confiscation, prison authorities can help to ensure that the individual, as well as the entire inmate population, will be less likely to engage in such prohibited conduct in the future." (Internal citations omitted.) Id., at 99-100.
The letter found in the petitioner's sneaker and confiscated by the respondent is addressed to another inmate and includes the following:
 If theres "anything" I can do to get you O-U-T 
"correctly or incorrectly" . . . then I'll waste them; out to sea w/ the bodies (no evidence) and you'd be a "physically free man" "my goal" !!` . . . Listen good — wherever you go, I'll contact you — (maybe a different name, but you'll know it's me — obviously) what you should do is file writs of habeas corpuses in the courts, so when I know your court date, I'll personally ambush the driver, and the other punk w/ that 40 caliber piece. . . . Simply put — I would like you to be a physically free man[.] . . . Once I get you out, I'll give you my address, #, etc. . . . I would like for you to read this 3, 4, or 5 times (if you have to) and lock all of this into you existence, then quite naturally (smile please) rip this up tiny and flush it[.] (Emphasis in original.) Resp't Ex. 2, at 11-13.
The petitioner's explanation for the letter and its contents was that he was writing a book, that the book was in the format of a letter, and that it was all a fantasy. Id., at 3. The hearing officer found the petitioner guilty of conspiracy to escape based on the letter containing the passages recited above, concluding that the letter clearly contains evidence of threats directed toward Department of Correction staff and plans to escape.
Based upon the foregoing, this court finds that there was a basis for the guilty finding in the second disciplinary proceeding. The respondent must be given some latitude in anticipating the probable consequences of CT Page 16619 allowing certain speech or the dissemination of particular written matter in the prison environment. Rogue v. Warden, supra, 181 Conn. 100. The respondent could reasonably conclude that the confiscated letter, which the petitioner intended to pass to another inmate but was prevented from doing so, "possess[ed] the likelihood of disruption to prison order or stability, or otherwise interfere[d] with the legitimate penological objectives of the prison environment." Id., at 98. In this particular case, the restrictions imposed (i.e., confiscation of the material and the disciplinary proceeding with the resultant sanctions) are no greater than necessary or essential to the protection of the governmental interest (i.e., maintaining internal security) involved. Id., at 98. Consequently, the claims raised by the petition for writ of habeas corpus are without merit.
Having failed to establish any constitutional violations, the petition seeking habeas corpus relief is denied.
BARRY, JUDGE TRIAL FEREE CT Page 16620