[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By petition filed November 19, 1998, petitioner seeks a writ of habeas corpus. For reasons hereinafter stated, the petition is denied.
Petitioner's claims arise out of two separate disciplinary proceedings in which he was adjudicated guilty of certain violations hereinafter considered separately.
From the evidence, it is found that all times material to the petition, petitioner was confined to the custody of the Commissioner of Correction serving an effective sentence of 15 years pursuant to sentences imposed on August 20, 1993.
Petitioner claims that he was subject to two separate disciplinary proceedings which resulted in sanctions being imposed upon him and that the proceedings were illegal and in violation of his constitutional rights to due process.
The United States constitutional requirement of due process mandates procedural protection before a prison inmate can be deprived of a protected liberty interest in good time credits. Where a prison disciplinary hearing may result in the loss of good time credits, the inmate must receive (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action.Superintendent. Mass. Corr. Institution v. Hill, 472 U.S. 445,455 (1985). The requirements of due process are satisfied if some evidence supports the decision of the prison disciplinary authority. Id.
 I.
On June 10, 1998, while he was confined at C.C.I. Enfield, petitioner was subject to a disciplinary report charging him with security tampering. In the Connecticut correctional system, disciplinary offenses are classified as A, B or C, Class A being the most serious. Security tampering was a Class A offense.
The disciplinary report indicated that the reporting officer, James Shea, had been informed by Lieutenant DeMaria that petitioner had initiated written correspondence with an inmate then confined at C.C.I. Willard/Cybileski. It was alleged that CT Page 4776 the letters were being sent through a third party in violation of Administrative Directive 10.7 and that petitioner had been warned against such violations on a prior date.
Procedures followed with respect to this disciplinary action and the second disciplinary action which will be considered later were basically as follows: Petitioner was informed of the complaint and given a written copy of the disciplinary report. He was assigned an advocate to assist him and he was allowed to enter a plea. In both instances, petitioner entered pleas of not guilty. A correctional officer was assigned to investigate the charge and another officer was assigned to serve as a hearing officer. After making his determination, the hearing officer rendered his decision and informed petitioner in writing stating the reasons for such decision. The procedure employed in handling both disciplinary reports is in substantial compliance with the case above cited.
The evidence before the hearing officer indicated that petitioner was communicating by letter with an inmate at another facility to promote an attempt to change the Capital MCI telephone system then in place to another system in which he and the other prisoner were planning to invest. The plan involved starting rumors among the inmates in various correctional institutions to get the population upset with Capital MCI.
The hearing officer determined that petitioner was in direct violation of the directive prohibiting security tampering. As a result of this conclusion, petitioner received a 15-day segregation, 90 days loss of good time, 90 days loss of telephone privileges and a 60-day loss of social correspondence. The 90-day loss of good time is sufficient to require due process in the disciplinary proceedings.
Petitioner's claim is not so much a denial of the facts as a claim that he was denied due process because he was not allowed to call witnesses and no regulation prohibiting such communications had been published at the time or that if it had been published he had not been notified.
It was claimed by petitioner that his due process rights were violated when he was not allowed to call witnesses at the hearing. The documents associated with the hearing, signed by petitioner, indicate that he did not request that witnesses be called on his behalf. This indication on the form may have resulted from petitioner having been informed that he would not CT Page 4777 be allowed to call live witnesses to testify at the hearing. The procedure employed for witnesses was that the accused person, such as petitioner, could submit the names of persons to be interviewed. An officer would then question the party and obtain a written statement which would be considered by the investigating officer. It was explained that the use of live witnesses at a disciplinary hearing could be a security problem with the danger of reprisals to the inmate/witness. It is found that this procedure is consistent with institutional safety and correctional goals as required by the case above cited.
Petitioner also claims that he had never been informed of the regulation prohibiting prisoner to prisoner correspondence using a third person and that he had received permission to engage in this type of correspondence.
The definition of security tampering as set forth in the Code of Penal Discipline includes fraudulent use of the mail system. The evidence indicates that this definition was in the code from at least February 21, 1997. Each inmate is given a copy of the code upon entry into the system. When changes are made to the code, distribution is not made to each individual inmate. A copy of the change is placed in the reference libraries which inmates have access to and notices are published on all bulletin boards in the inmates' housing area. It is the inmate's duty to keep himself informed as to the current state of the regulations.
On February 16, 1998, there was an administrative directive amending the Code of Penal Discipline. This amendment was published in the prescribed manner. The amended code, however, had a number of discrepancies requiring several amendments to the amendment. These changes may have been the source of some confusion. Despite this confusion, petitioner must have been aware that his conduct was in violation of the directive which had been issued on February 21, 1997.
Petitioner's claim that he was given permission to communicate with other prisoners in this manner does not appear logical. It would be in violation of the administrative code and it is doubtful that this could be authorized by anyone. The letter from Warden Marcial was to the effect that his office was never aware of permission to engage in this type of communication.
 II.
While still incarcerated at the correctional facility at CT Page 4778 Enfield, petitioner was again subject to disciplinary proceedings initiated on September 4, 1998. The charge was disobeying a direct order. This was a Class B offense. Petitioner entered a plea of not guilty but was found guilty and a sentence often days punitive segregation, a 60-day loss of mail privileges and a 60-day loss of good time was imposed. Because of the loss of good time, the requirement of due process attached to the disciplinary proceedings. Petitioner claims that he suffered a deprivation of his rights to due process in this proceeding.
The description of petitioner's violation as contained in the disciplinary report may be summarized as follows.
While reviewing petitioner's mail, a letter was found with three order forms for various publications that he was attempting to order. On the application for the "Hartford Business Journal," petitioner was listed as company, "Prisoner Services Corporation." The mailing address was listed as Post Office Box 1500, Enfield, CT 06083. This is the address of the Enfield Correctional Facility. The report further stated that petitioner had been spoken to on several occasions in regard to his continued attempt of operating a business while incarcerated. As noted in the incident report dated October 22, 1997, by Major Gonzalez, petitioner was ordered to cease any future misrepresentation and that any future violations would result in disciplinary action. There was also a reference to a letter from petitioner found in the property of another inmate who had been transferred from Enfield to Brooklyn Correctional Institution.
A review of the file indicates that there was sufficient evidence upon which the hearing officer could conclude that petitioner was guilty of this violation.
Petitioner does not dispute the fact that he may have engaged in the conduct which was the subject of the disciplinary report. His claim is that his rights to due process were violated in the conduct of the disciplinary proceedings. Petitioner claims that there was no evidence that he had received an order prohibiting him from using Prisoner Services Corporation in his address and that witnesses which he had requested were not called. He also claimed that the evidence of misconduct and the statements of witnesses were not disclosed to him.
With respect to the claim that petitioner had never received a direct order prohibiting the conduct which was the subject of the violation, a review of the file indicates that there was some CT Page 4779 evidence supporting the conclusion of the hearing officer. There was sufficient evidence to indicate that petitioner had been warned about the type of conduct that he was engaged in and that he should include his inmate number and clearly identify his address as the correctional institution.
The procedure used with respect to witnesses requested by petitioner was identical to that used in his previous disciplinary proceeding. The testimony of an inmate Perez was requested. Mr. Perez's statement indicated that he had received correspondence from petitioner while he was incarcerated. Evidently, petitioner wished to prove that he had engaged in the prohibited correspondence on other occasions without complaint. He mistakenly concluded that this would constitute a defense to the disciplinary proceedings. He also listed as a witness Major Gonzalez. This officer's statement indicated that he had told petitioner to stop representing himself when soliciting mail and that petitioner had been further instructed to include his name and number on all correspondence. Both of these statements were considered by the hearing officer. It is doubtful to see how these statements constitute a defense to the charge against petitioner.
The claim that the statements were not disclosed to petitioner has not been proven.
 III.
From all of the evidence and the reasonable conclusions which may be drawn from such evidence, it must be found that in both of the disciplinary proceedings, which form the basis of this petition, petitioner was not denied his rights to due process and in both disciplinary proceedings there was some evidence to support the conclusion of the hearing officer. Superintendent,Mass. Corr. Institution v. Hill, 472 U.S. 445, 455 (1985).
Accordingly, the petition for a writ of habeas corpus
Joseph J. Purtill Judge Trial Referee CT Page 4780