**Israel SARMIENTO, Petitioner–Appellant,**

v.

**John R. HEMINGWAY, Warden, Respondent–Appellee.**

No. 03–1809.

United States Court of Appeals, Sixth Circuit.

March 15, 2004.

Israel Sarmiento, Milan, MI, pro se.

James A. Brunson, Asst. U.S. Attorney, U.S. Attorney's Office, Bay City, MI, for Respondent–Appellee.

Before: MERRITT and DAUGHTREY, Circuit Judges; and HOOD, District Judge.*

### ORDER

Israel Sarmiento, a pro se federal prisoner, appeals a district court judgment dismissing his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. This case has been referred to a panel of the court pursuant to Rule 34(j)(1), Rules of the Sixth Circuit. Upon examination, this panel unanimously agrees that oral argument is not needed. Fed. R.App. P. 34(a).

Sarmiento was convicted in 1997 for conspiracy to distribute methamphetamine. He was sentenced to 120 months of imprisonment. Sarmiento filed his habeas corpus petition challenging a decision of a disciplinary hearing officer. After a hearing, the officer found Sarmiento guilty of tampering with a security device, specifically, a housing unit's fire alarm. As a result of the guilty decision, Sarmiento lost twenty-seven days of good time credits, was placed in disciplinary segregation for

---

\* The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

thirty days, and lost 180 days of commissary privileges which was suspended pending 180 days of clean conduct.

After exhausting his available administrative remedies, Sarmiento filed his habeas corpus action with the district court stating that he was actually innocent of the charges and that there was insufficient evidence to support the hearing officer's findings. The district court dismissed the petition as meritless, noting that the officer's decision was supported by the evidence.

In his timely appeal, Sarmiento asserts that the district court erred in concluding that there was sufficient evidence to support the hearing officer's decision.

The district court's order is reviewed de novo. *See Charles v. Chandler*, 180 F.3d 753, 755 (6th Cir.1999).

The district court properly dismissed Sarmiento's petition. To determine whether a liberty interest is implicated in a prison setting, the interest must be limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483–84, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case. *Id.* at 484. A liberty interest was implicated as Sarmiento suffered a loss of twenty-seven days of good time credits as a result of being found guilty of the misconduct charge. *See id.* at 483. Nevertheless, the respondent did not violate Sarmiento's due process rights.

When a prisoner faces the loss of good time credits, due process requires that a prisoner receive the following hearing rights: 1) written notice of the hearing at least twenty-four hours in advance; 2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and 3) a written statement by the factfinder of the evidence relied on and the reason for the disciplinary action. *Wolff v. McDonnell*, 418 U.S. 539, 563–67, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Further, some evidence must exist to support the disciplinary conviction. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Sarmiento contends that the hearing officer's decision was not supported by the evidence. The case concerns an incident on November 6, 2001, when someone on the second floor of building two (2–2) of the Federal Medical Center in Rochester, Minnesota pulled the fire alarm. The staff of the facility had previously applied an anti-theft detection powder on the fire alarm due to a rash of fire alarm activations in housing unit 2–2 from October 21, 2001, through October 25, 2001. The invisible powder turns a bluish purple when it comes in contact with skin and water is applied.

An investigation followed the November 6, 2001, incident. Operations Lieutenant S.L. Jacobson reported that:

> Inside the pull station there were two definite fingerprint markings where the [theft detection] powder had been lifted up. Staff checked every inmate's hands on 2–2 and also sprayed the[m] with tap water and had them rub their hands together. No inmate had any indication of ink stains on their hands other than inmate Israel Sarmiento.

> Inmate Sarmiento was observed with horizontal stains across the tips of his pointer finger and middle finger of his

right hand. The horizontal markings formed a straight line when he cupped his fingers as if pulling a fire alarm. There were also pinpoint stains on his right palms, staining under the fingernail of the pointer finger, and also on the top of the left hand above the small finger knuckle. All of the stains appeared to be bluish purple in color. Officer Bob Haling initially identified inmate Sarmiento with markings on his hands during the bed book count. Both Mr. Peterson and I checked the inmate's hands and observed the stains. Mr. Peterson then poured water over inmate Sarmiento's hands and had him rub them together. The stains did not disappear or smear. I then escorted inmate Sarmiento to the bathroom and had him wash hi[s] hands (no soap) and vigorously rubbed his hands together. The stains did not wash away or smear.

. . . .

Inmate Sarmiento stated the stains on his hands were pen ink from a broken pen he had been writing with earlier in the day. I asked him to produce the pen for me from his cell. He stated he had broke [sic] the pen at his work site. He also said he was sleeping when the fire alarm was activated.

Officer Haling had very similar staining to his hands which were bluish purple in color. He received these stains when he reset the fire alarm station which had been activated. It was our group consensus that the staining on the hands of Sarmiento was very similar to the markings on Officer Haling's hands. It was also our consensus that they were most likely caused by activating the fire arm pull station.

As a result of the investigation, Sarmiento was charged with misconduct. On November 20, 2001, the hearing officer conducted a hearing on the charge. Sar-

miento's defense was that he was in bed when the fire alarm rang and that he accidentally got ink on his hands when he broke a pen at his job site. Following the hearing, the officer made the following decision:

Based on the memo from Lt. S. Jacobson, stating that invisible stain thief detection powder had been put on the fire alarms in building 2, and that after another fire alarm had been pulled, it was definite that powder had been lifted off in two fingerprints, so all inmates housed in building 2 were checked for detection ink, and the only inmate in the whole unit, with the ink on his hands was inmate Sarmineto [sic]; the fact that the fire alarm was pulled at 3:55 p.m., when all inmates were in their housing units for count, so no other inmates would have had access to the fire alarm; the memo from Lt. S. Jacobson, which states that the horizontal stains on the tips of inmate Sarmineto's [sic] fingers formed a straight line when he cupped his fingers, and matched the pulling on the fire alarm, and the fact that the officer who had to reset the alarm, also had the detection ink on his hands, that the color was a bluish purple, and the color matched the color of the ink stains on inmate Sarmineto's [sic] hand; the memo from inmate Sarmineto's [sic] work supervisor, stating that he observed inmate Sarmineto [sic] break a white pen, stating that the pen did not work, but that he did not notice any ink or ink stains on inmate Sarmineto's [sic] hands at the time; the fact that staff take a sworn oath to give true and accurate accounts of events as they occur; and the statement of Lt. T. Miller, in the body of the incident report, that upon completion of his investigation, he had determined that inmate Sarmineto's [sic] ink stained fingers, clearly identified him as the puller of the fire alarm

at 3:35 p.m.; this DHO finds that the greater weight of the evidence supports the finding that inmate Sarmineto [sic] did commit the prohibited act of "tampering with a security device," Code # 208.

As the hearing officer's decision is supported by some evidence, Sarmiento's constitutional rights were not violated. *Id.* Accordingly, we affirm the district court's judgment. Rule 34(j)(2)(C), Rules of the Sixth Circuit.