UNPUBLISHED ORDER

Not to be cited per Circuit Rule 53

# United States Court of Appeals

For the Seventh Circuit
Chicago, Illinois 60604

Submitted August 11, 2005[*]
Decided August 22, 2005

Before

Hon. FRANK H. EASTERBROOK, Circuit Judge

Hon. MICHAEL S. KANNE, Circuit Judge

Hon. DIANE S. SYKES, Circuit Judge

No. 04-3805

KEVIN S. GORDON,
        *Petitioner-Appellant*,

        *v.*

ED BUSS, Superintendent,
        *Respondent-Appellee*.

Appeal from the United States District Court for the Northern District of Indiana, South Bend Division.

No. 3:03cv0935 AS
Allen Sharp, *Judge*.

## Order

Kevin Gordon left his coat behind in a prison cafeteria. Looking through the pockets in an effort to identify the coat's owner, guards found a map of the prison with the entrance of a utilities tunnel marked, plus a ten-inch ponytail that Gordon recently had cut off. He was charged with possessing escape paraphernalia—something that the prison thought serious, because Gordon's current sentence was imposed for the crime of escaping from another prison. Indiana rescinded 180 days of Gordon's earned-time credit, placed him in segregation for six months, and reduced his credit-earning class. The district court denied Gordon's petition for a writ of habeas corpus, see 28 U.S.C. §2254, ruling that the prison had followed all proce-

---

[*] After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and the record. See Fed. R. App. P. 34(a); Cir. R. 34(f).

dural requirements and that the decision has the support of some evidence, the constitutional standard. See *Superintendent of Walpole v. Hill*, 472 U.S. 445 (1985).

Gordon's principal contention on appeal is that both the disciplinary board and the district judge were biased against him. The only "evidence" of bias that he presents, however, is the adverse decision. Half of all litigants lose on the merits; this does not show bias. See *Liteky v. United States*, 510 U.S. 540 (1994). The district judge did err to the extent that he thought any of Gordon's theories forfeited for lack of presentation in the administrative process, but appellate courts exist to deal with claims of error, and this one is rectified easily enough: the state has confessed error, and we reach the merits (as the district judge did too, in an alternative ruling).

The prison disciplinary board mentioned both the map and the hair when ruling against Gordon. He complains that the map was not properly in evidence, but technical rules do not apply to administrative decisionmakers. The Board knew what the map represented, and Gordon had an opportunity to respond to its potential significance. The major problem with the Board's reliance on the map (if "reliance" is what the brief mention in its decision implies) is that the prison administration's own investigation cleared Gordon of any claim that he had obtained and marked the map as part of an escape plan. The map had been given to Gordon by the prison's "tag shop," where he worked, and the coloring designated a portion of the corridor that Gordon had been assigned to paint. The investigative report related that Gordon was not supposed to retain the map in his possession, and the fact that he violated this direction might have supported some penalty, but the disciplinary board did not clearly distinguish between that offense and the potentially more serious charge that Gordon had obtained and marked the map himself to help with an escape.

It is unnecessary to obtain clarification, however, because when Gordon pursued administrative review within the prison system higher officials stated that their decisions rested on the hair. To a novice in escape techniques, a ponytail may not seem in the same class as a hacksaw or a chisel. As an administrative reviewer explained, however, "in the past, hair has been used as an integral part of means to disguise life like offenders for the purpose of buying more time for an escape and eluding capture." Guards who see a life-like figure in a prisoner's bed may not realize until too late that it is a dummy, and that the real prisoner has flown the coop. C.A. Penfold, the prison system's Final Reviewing Authority, stated that he was relying on the conduct report, which spelled out how Gordon came by the map; this demonstrates that his punishment does not rest on a mistaken belief that the marking on the map was a pointer to an escape route. But the possibility that hair could be used to delay an escape's discovery is "some evidence" to support the decision, so Gordon is not entitled to federal collateral relief.

AFFIRMED