NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

_____

No. 11-2632
_____

DARNELL PITTMAN, SR.,
                        Appellant

v.

B. A. BLEDSOE

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-10-cv-00645)
District Judge:  Honorable Richard P. Conaboy
_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2011

Before: SLOVITER, VANASKIE, *Circuit Judges*
and STENGEL,[*] *District Judge*

(Filed: February 17, 2012)
_____

OPINION
_____


STENGEL, *District Judge*.

_____

[*] Hon. Lawrence F. Stengel, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

Darnell Pittman appeals from an Order of the United States District Court for the Middle District of Pennsylvania denying two petitions for writs of *habeas corpus* filed pursuant to 28 U.S.C. § 2241.  The petitions involve disciplinary proceedings stemming from two separate incidents that occurred in 2009, while Pittman was incarcerated at the U.S. Penitentiary – Canaan.  For the reasons below, we will affirm.

In the first incident, Pittman was charged with "assaulting any person."  According to the associated incident report, a correctional officer was injured while trying to un-cuff Pittman through the food slot box of his cell.  The report provides the following details:

> While on duty as SHU 4 officer I was assisting in escorting inmate Pittman back to his cell.  Inmate Pittman was asked to place his hands and wrists through the wicket to remove the handcuff restraints upon entering cell 101.  After removing the first cuff on inmate Pittman's left hand he violently pulled away from the wicket with his right hand and pulled me toward the wicket ripping the handcuffs out of my hand.  The handcuff key was broken off inside the handcuffs.

In the second incident, Pittman was charged with "assaulting any person" and "insolence towards a staff member," while being escorted from a suicide watch cell to a dental examination.  The associated incident report indicates:

> On 2-11-2009 at approximately 9:20 AM while restraining i/m Pittman, D. #30282-160 in preparation to take him from suicide watch cell to the dental area for a dental examination he told LT. Trentley he had to use the rest room.  I/m Pittman had his blanket wrapped around his waist.  I removed the blanket before placing him in the restroom and as the door was being shut he turned around and called me a nigger and spit on me.  I was spat on my face and upper chest.

In his *habeas* petitions, Pittman argued that (1) he was denied procedural due process because he was not provided a preliminary hearing before the Unit Disciplinary

2

Committee, or a disciplinary hearing before a Disciplinary Hearing Officer; (2) these denials of hearings prevented him from presenting witness testimony and certain documentary evidence; and (3) he has been prejudiced because he was sanctioned with a loss of twenty-seven days of good time, he received thirty days of disciplinary segregation, and a loss of commissary privileges for 180 days.

In its response to the petitions, the Bureau of Prisons presented evidence in an attempt to establish that Pittman had not been denied those hearings, but rather refused to attend them. In fact, the Bureau insisted that Pittman not only refused to attend the hearings, he refused to sign the waiver of attendance when presented with it in his cell. The Magistrate Judge issued a Report and Recommendation recommending the petitions be denied, which the District Court declined to adopt, finding that certain reports in the record were inconsistent and the Bureau's account of what happened was implausible. The court also found that the documentation provided by Pittman was sufficient to present a factual dispute about whether Pittman was given the opportunity to present witnesses and have a staff representative, and whether he made those requests at the hearing before the Disciplinary Hearing Officer. The court consolidated the two petitions under the same case number, and remanded the case to the Magistrate Judge for further proceedings.

The Magistrate Judge appointed the Federal Community Defender Association to represent Pittman, and scheduled an evidentiary hearing for February 24, 2011. Before the hearing took place, however, the Bureau of Prisons conducted administrative re-hearings for both challenged disciplinary incidents. The Unit Hearings occurred on

3

January 14, 2011 where the Warden assigned a staff representative to assist Pittman at the disciplinary hearings which were held on January 31, 2011.

After the hearing on the "handcuff incident," the Disciplinary Hearing Officer found Pittman guilty of assaulting the correctional officer, relying on the correctional officer's statement and noting that the officer had no reason to lie while Pittman did. The Hearing Officer also relied on supporting memos from other correctional officers and medical documentation supporting the correctional officer's injury. Finally, the Hearing Officer relied upon Pittman's own statement that "When one of the cuffs was removed, I took advantage and admit that I did in fact pull away which caused the officer's injury to his hand."

At the disciplinary hearing for the "spitting incident," Pittman denied spitting on the correctional officer and using a racial slur. The Disciplinary Hearing Officer, however, found otherwise, again observing that the correctional officer had no reason to lie while Pittman did.

Over Pittman's objection, the Magistrate Judge granted the Bureau of Prisons' motion to cancel the evidentiary hearing, finding that the re-hearings had caused the issues involving possible due process violations in the initial misconduct proceedings to have become moot. The Magistrate Judge ordered counsel to submit a brief in support of a grant of *habeas* relief or to file an amended petition. Pittman filed an amended petition and supporting brief to which the Bureau of Prisons responded.

The Magistrate Judge recommended that the amended *habeas* petition be denied because Pittman had received the due process rights afforded by Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and Superintendent v. Hill, 472 U.S. 445 (1985). The

4

Magistrate Judge also found that Pittman's claim of prejudice caused by the delay in having the second hearing did not rise to a due process violation. Following a *de novo* review, the District Court overruled Pittman's timely-filed objections and denied the amended *habeas* petition, finding that there were no Wolff or Hill due process violations, that the delay did not amount to a due process violation, and that there was some evidence in the record to support the decisions of the Hearing Officer. Pittman appealed.

We have appellate jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and "exercise plenary review over the District Court's legal conclusions and apply a clearly erroneous standard to its findings of fact." O'Donald v. Johns, 402 F.3d 172, 173 n.1 (3d Cir. 2005) (per curiam); see also United States v. Friedland, 83 F.3d 1531, 1542 (3d Cir. 1996) ("review of the district court's Order denying . . . relief under 28 U.S.C. § 2241 is plenary"). A complaint challenging the loss of good-time credits is cognizable under § 2241. Queen v. Miner, 530 F.3d 253, 254 n.2 (3d Cir. 2008).

Pittman concedes that the administrative re-hearings offered a certain measure of satisfaction of the procedural requirements. He argues, however, that the two-year delay in affording him the constitutionally required administrative procedure in connection with the disciplinary infractions constituted a denial of due process. Pittman contends that the delay resulted in a loss of evidence, including videotapes of the two incidents, the release from prison of one of his potential witnesses, and the inability of another potential witness to recall the incident.

The Bureau of Prisons is responsible for administering the Federal Prison System which includes the discipline of inmates. See 18 U.S.C. § 4042. Prison disciplinary proceedings are not treated the same as a criminal prosecution, and the entire range of

5

rights due a defendant in a criminal proceeding does not apply in prison disciplinary proceedings. Wolff, 418 U.S. at 556. Prisoners are, however, guaranteed certain due process protections, especially when faced with the loss of good time credits against their prison sentence as a result of prison misconduct. Id. at 564-565. The minimum required protections include: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in the prisoner's defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454 (citing Wolff, 418 U.S. at 563-567). Revocation of good time does not comport with "the minimum requirements of procedural due process," unless the findings of the prison disciplinary board are supported by "some evidence in the record." Id. Thus, the decision of a Disciplinary Hearing Officer is entitled to considerable deference by a reviewing court. If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenge presented by the prisoner. Id. at 457.

We agree with the District Court that Pittman was afforded the protections required for procedural due process in the context of prison disciplinary hearings and that the delay in conducting the re-hearings did not violate Pittman's due process rights. Pittman himself concedes that he was afforded the assistance of a staff representative, the right to present witness testimony, and the right to present documentary evidence. Furthermore, there exists some evidence in the record to support the decisions of the Disciplinary Hearing Officer. In finding that Pittman had committed the offense charged in the "handcuff incident," the Hearing Officer based his decision upon the statement of

6

the correctional officer.  He also took into consideration Pittman's admission that he had taken advantage of the situation in which one of his hands was handcuffed when he pulled away causing injury to the officer's hand.  In finding that Pittman had committed the offenses charged in the "spitting incident," the Hearing Officer also based his decision upon the statement of the correctional officer, finding that the officer was credible because he had no reason to lie about the incident and Pittman did.

We also agree with the District Court that Pittman was not prejudiced by the delay.  Pittman's contentions lack any proof that the delay in conducting the re-hearings played any role in the outcome of the disciplinary adjudications.  One of Pittman's potential witnesses indicated that he did not know anyone by the name "Pittman," but had he been provided with a nickname or some additional information, he might have had "something to say."  The witness had no recollection of the "handcuff incident," contrary to Pittman's contention.  In addition, Pittman complains that another potential witness was released from prison approximately ten months after the "handcuff incident" and was therefore unavailable at the re-hearing.  The District Court properly found that the Bureau of Prisons should not be held to have prejudiced Pittman by the unavailability of a potential witness where Pittman did not mention the witness by name in his *habeas* petition.  Pittman also claimed that a fellow inmate had witnessed the "spitting incident." That witness testified, however, that he was not physically in the area of the "spitting incident," and therefore observed nothing.  Thus, the passage of time would have had no bearing on this witness's testimony.  In addition, as found by the District Court, there was no evidence that Pittman had requested that witness testimony or any evidence be presented on his behalf at the original hearings held within weeks of the incidents.  No

7

colorable showing was offered that the putative witnesses would have provided testimony that could have caused a different adjudication had the delay not occurred.

Finally, Pittman insists that prison video cameras recorded both of the incidents on videotape but the delay resulted in the videotape's unavailability. The District Court properly found, however, that such evidence did not exist, and based its finding on uncontroverted reports from the prison staff describing the limited capability of the fixed cameras near where the incidents occurred. These reports showed that it was impossible for the video cameras to have captured the incidents. The passage of time would thus have had no impact on this lack of evidence.

For the foregoing reasons, we will affirm the Order of the District Court.